United States Court of Appeals,

Fifth Circuit.

No. 95-10513.

Odell JONES, III and Jones Program Management, Inc., Plaintiffs-Appellants,

v.

SHEEHAN, YOUNG & CULP, P.C., Defendant-Appellee.

May 20, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER,[1] District Judge.

DUHÉ, Circuit Judge:

Appellants' damages suit against their former attorneys was dismissed on summary judgment on the basis of collateral estoppel. We affirm, but do so on the basis of res judicata.

I. BACKGROUND

Jones Program Management, Inc., ("JPM"), acting through its President, Odell Jones, III, ("Jones"), and Jones, acting as guarantor for JPM, entered into an agreement for legal services with Sheehan, Young & Culp, P.C., ("SYC"), to collect sums owed JPM by Richter's Entertainment Group, Inc., ("REG"). SYC accordingly filed suit on JPM's behalf against REG in the 134th Judicial District Court of Dallas County, Texas, (the "REG litigation"). JPM later discharged SYC and retained another law firm to conclude the REG litigation. Three suits subsequently ensued concerning

[1]District Judge of the Northern District of California, sitting by designation.

1

SYC's claim for unpaid attorney's fees incurred in representing JPM in the REG litigation.

A. *The state court action*

SYC intervened in the REG litigation (hereafter the "state court action") to recover from JPM the balance of unpaid attorney's fees. JPM moved to strike the intervention, but did not file an answer or counterclaims against SYC. JPM did answer an interrogatory propounded by SYC, asserting in its answer a right to an offset against SYC's attorney's fees claim because of SYC's alleged "legal malpractice, negligence, gross negligence, fraud, and deceptive trade practices." SYC's intervention was tried without a jury in JPM's absence, and the state court awarded SYC a money judgment against JPM.

B. *The county court action*

SYC also filed suit in the County Court at Law No. 1, Dallas County, Texas, (hereafter the "county court action") against Jones, individually, to enforce his guaranty on the JPM/SYC agreement. Jones answered and counterclaimed against SYC on grounds of legal malpractice, negligence, malfeasance, gross negligence, fraud, conspiracy, and violations of the Texas Deceptive Trade Practices Act. The county court action was dismissed without prejudice pursuant to Jones' motion alleging lack of jurisdiction, but was subsequently reinstated. After a bench trial, at which Jones did not appear, the county court entered judgment awarding SYC a money judgment against Jones and ordering that Jones take nothing on his counterclaims.

*C. The federal court action*

After dismissal of the county court action, but prior to its reinstatement, Jones sued, on his own behalf, in the United States District Court for the Northern District of Texas (hereafter the "federal court action") seeking damages from SYC arising from SYC's representation of JPM in the REG litigation. Jones' claims include legal malpractice, negligence, malfeasance, gross negligence, fraud, conspiracy, and violations of the Texas Deceptive Trade Practices Act. SYC answered, alleging that Jones, individually, lacked standing to assert claims based upon SYC's representation of JPM. SYC also asserted counterclaims for the unpaid legal fees. SYC moved to dismiss, claiming JPM, and not Jones, was the real party in interest, or alternatively that JPM was an indispensable party. In response, Jones amended his complaint to add JPM as a plaintiff.

After both the county and state court actions had been concluded, SYC moved for summary judgment in the federal court action based on claims of res judicata, collateral estoppel, and the doctrine of sole remedy, alleging that Jones and JPM had had their opportunity in the earlier suits to litigate the claims and issues asserted in the federal court action. SYC's motion was granted on the basis that collateral estoppel precluded Jones and JPM from relitigating issues settled by the Texas courts. The judgment ordered that Jones and JPM take nothing on their claims against SYC and that SYC recover its court costs. Jones and JPM timely filed a joint notice of appeal.

## II. DISCUSSION

### A. Standard of Review

We review grants of summary judgment de novo, guided, as was the district court, by the standards of Federal Rule of Civil Procedure 56. *Stults v. Conoco, Inc.,* 76 F.3d 651, 654 (5th Cir.1996); *Blanchard v. Forrest,* 71 F.3d 1163, 1166 (5th Cir.1996). Accordingly, a party may obtain summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The district court granted SYC's summary judgment motion based on collateral estoppel, or issue preclusion. SYC's motion, however, pled collateral estoppel, res judicata, and the doctrine of sole remedy in the alternative. We may affirm a district court's ruling on summary judgment based on any legally sufficient ground, even one not relied upon by the district court. *BMG Music v. Martinez,* 74 F.3d 87, 89 (5th Cir.1996); *Missouri P. R.R. v. Harbison-Fischer Mfg. Co.,* 26 F.3d 531, 538 (5th Cir.1994). Making use of such latitude, we affirm the district court's granting of SYC's motion for summary judgment based on the application of the doctrine of res judicata.

### B. Res Judicata

When a federal court is asked to give res judicata effect to a state court judgment, the federal court must determine the

preclusiveness of that state court judgment under the res judicata principles of the state from which the judgment originates. *Production Supply Co. v. Fry Steel Inc.,* 74 F.3d 76, 78 (5th Cir.1996); *Hogue v. Royse City,* 939 F.2d 1249, 1252 (5th Cir.1991). Because SYC interposes the judgments of Texas courts as bars to JPM's and Jones' current suit, we look to Texas res judicata law to resolve this dispute.

In Texas, "[r]es judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). To invoke the doctrine, the proponent must prove: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them, and (3) a second action based on the same claims as were raised or should have been raised in the first action. *See Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771-72 (Tex.1979).

*1. Prior final judgment on the merits by a court of competent jurisdiction*

Jones and JPM contend that the county and state courts, respectively, lacked jurisdiction to issue final, binding judgments against them.[2] At this point, we reiterate that, while Jones and JPM are co-plaintiffs in the federal court action, only Jones was

---

[2]Although default judgments were entered in both the state court and county court actions, neither JPM nor Jones contests their finality.

a party to the county court action, and only JPM was a party to the state court action.

### a. *Jones and the county court action*

Jones contends that the county court was not a court of competent jurisdiction. His attacks are numerous; yet, as to most, his response to SYC's summary judgment fails to point to evidence in the record sufficient to create an issue as to the county court's jurisdiction. Once the movant presents a properly supported motion for summary judgment, the non-movant must "go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file,' designate "specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). Rule 56, therefore, saddles the non-movant with the duty to "designate" the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)), *cert. denied,* --- U.S. ----, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Nissho-Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988). Nor is it our duty to so

scrutinize the record on appeal.[3]  *Forsyth,* 19 F.3d at 1537.

_____

[3]Like the district court, out of an abundance of caution, we have searched the record for support for Jones' complaints.  Our efforts only confirm that his attacks, for the most part, are frivolous.

Jones contests the county court's jurisdiction over his person.  Surprisingly, however, in the same breath, Jones admits that by filing his answer and asserting his counterclaims in the county court, he "submitt[ed] [himself] to the jurisdiction of the County Court."  Brief for Appellants at 7.  By his own admissions, Jones has foretold the futility of his attack on the county court's in personam jurisdiction.  *See* Tex.R.Civ.P.Ann. r. 121 (West 1979); *Morris v. Morris,* 894 S.W.2d 859, 862 (Tex.App.—Fort Worth 1995, n.w.h.) ("Once a party enters an appearance by filing an answer without challenging jurisdiction, he is before the court for all purposes.").

Jones also argues that the county court lacked subject matter jurisdiction over this suit because the requisites for diversity jurisdiction in the federal court existed.  Implicitly, Jones' complaint is that the existence of diversity jurisdiction in a federal court deprives a state court of general jurisdiction of its authority.  Jones is clearly misguided.  Indeed, federal diversity jurisdiction permits state and federal courts to exercise *concurrent* jurisdiction.  *See Colorado River Conservation Dist. v. United States,* 424 U.S. 800, 809, 96 S.Ct. 1236, 1242, 47 L.Ed.2d 483 (1976) ("There is no irreconcilability in the existence of concurrent state and federal jurisdiction. Such concurrency has ... long existed under federal diversity jurisdiction.").

Additionally, Jones complains that the county court divested itself of jurisdiction when it entered the order of dismissal.  As such, Jones' filing of suit in federal court before the county court granted SYC's motion to reinstate the county court action provided the federal court with "dominant" jurisdiction over the matter.  Whether the order of dismissal in fact deprived the county court of jurisdiction during the interval between dismissal and reinstatement, and if so the effect of Jones' intervening filing in federal court, is irrelevant.  When two suits are pending simultaneously in two different courts, preclusiveness of one as to the other is determined not by which was filed first, but by which reaches judgment first.  *Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991).  *See also Hansler v. Mainka (In re Hansler* ), 988 F.2d 35, 38 (5th Cir.1993); *Hogue,* 939 F.2d at 1256.  In this case, the

7

One of Jones' contentions, however, does warrant discussion. Jones argues that the damages sought in his counterclaims exceeded the jurisdictional limit of the statutory county court, and thus the county court lacked jurisdiction to adjudicate those counterclaims. Counterclaims are treated as separate suits and must independently comport with the trial court's jurisdiction. *Color Tile, Inc. v. Ramsey,* 905 S.W.2d 620, 623 (Tex.App.—Houston [14th Dist.] 1995, n.w.h.); *Tejas Toyota, Inc. v. Griffin,* 587 S.W.2d 775, 776 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). *See also Smith v. Clary Corp.,* 917 S.W.2d 796, 797-98 (Tex.1996) ("A counterclaim, whether permissive or compulsory, must be within the court's jurisdiction."); *Gimbel v. Gomprecht,* 89 Tex. 497, 35 S.W. 470, 470 (1896) ("The plea in reconvention filed by the defendants in this case was in effect a suit by them against the plaintiffs, and the amount in controversy was the damages claimed in that plea...."). A statutory county court has jurisdiction in "civil cases in which the amount in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages

---

county court action concluded prior to the federal court action.

Finally, Jones contends that SYC, by receiving service of summons and citation, filing an answer and counterclaims, and pursuing discovery in the federal court action, "evidence[d] their relinquishment of state court jurisdiction and assent to federal court jurisdiction." Brief for Appellant at 17. Accordingly, SYC either waived the county court's jurisdiction over its claims or is estopped from asserting that the county court had jurisdiction over its claims. Jones provides no authority to support these claims, nor, not surprisingly, have we uncovered any. Consequently, we find these claims unavailing, too.

8

and penalties, and attorney's fees and costs, *as alleged on the face of the petition.*" Tex.Gov't Code Ann. § 25.0003(c)(1) (West Supp.1996) (emphasis added). To determine whether Jones alleged claims seeking relief beyond the jurisdiction of the county court, we look to the amount alleged in Jones' pleading. *See Kitchen Designs, Inc. v. Wood,* 584 S.W.2d 305, 306 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Tejas Toyota, Inc.,* 587 S.W.2d at 776 (citing *Gimbel,* 89 Tex. 497, 35 S.W. 470 (1896)).

Jones argues that his pleadings expressly alerted the county court that he sought relief on his counterclaims in excess of $100,000.[4] Jurisdiction, however, is determined by the amount in controversy at the time the original pleading is filed. *Smith v. Texas Improvement Co.,* 570 S.W.2d 90, 92 (Tex.Civ.App.—Dallas 1978, no writ). Jones first raised counterclaims against SYC in his first amended original answer.[5] Def.'s Summ.J.Ex.C. For

---

[4]Support for this contention comes from a single statement in Jones' second amended original answer in the county court action. Therein, Jones stated: "Jurisdiction is not proper in this Court because the amount in controversy, exclusive of interest and costs, exceeds $100,000.00 and the matter in controversy is between citizens of different states." As this pleading was not made part of the summary judgment record, however, we cannot rely on its contents in ruling on SYC's motion. *See Skotak,* 953 F.2d at 915; *Nissho-Iwai Am. Corp.,* 845 F.2d at 1307.

[5]Under Texas law, once jurisdiction attaches it cannot be defeated by any subsequent fact or event. *Flynt v. Garcia,* 587 S.W.2d 109, 109-10 (Tex.1979). Accordingly, assuming Jones' allegations in his second amended original answer are sufficient to affirmatively plead him out of the jurisdiction of the county court, and assuming we could consider those allegations in evaluating the summary judgment, we recognize that a claimant cannot deprive the court of jurisdiction already properly obtained simply by amending his pleading to allege damages in excess of the court's jurisdictional limits. *Smith,* 570 S.W.2d

determining jurisdiction, then, we regard Jones' first amended original answer as the original pleading in his cross action, and we look to its allegations to determine the amount in controversy.

In his first amended original answer, Jones alleged: "Jurisdiction is not proper in this Court pursuant to 28 U.S.C. § 1332 because the ... amount actually in controversy, exclusive of interest and costs, exceeds *$50,000.*" Def.'s Summ.J.Ex.C at para. 11 (emphasis added). Further, Jones repeatedly contended that SYC's conduct rendered it "liable to [Jones] for an amount in excess of the *minimum* jurisdictional limits of this Court." *Id.* at para. 33, 47 (emphasis added).[6] These allegations are ambiguous, at best, as to the amount actually in controversy pursuant to Jones' counterclaims. In this case, such ambiguity works against Jones.

In cases of doubt, all intendments of the claimant's pleading will be construed in favor of jurisdiction. *Peek v. Equipment Serv. Co.,* 779 S.W.2d 802, 804 (Tex.1989); *Pecos & N. Tex. Ry. v. Rayzor,* 106 Tex. 544, 172 S.W. 1103, 1105 (1915). Indeed, unless it is clear from the face of the pleadings that the court lacks jurisdiction of the amount in controversy, the court should retain the case. *Id.; Taliancich v. Betancourt,* 807 S.W.2d 891, 892

---

at 92; *Cook v. Jaynes,* 366 S.W.2d 646, 647 (Tex.Civ.App.—Dallas 1963, no writ). Again, Jones' reliance on the allegations of his second original amended answer is unavailing.

[6]Jones also alleges that SYC is liable to him for punitive damages and attorney's fees. Def.'s Summ.J.Ex.C at para. 34, 48, & 49. Section 25.0003, however, explicitly excludes such items from the amount-in-controversy determination. Tex.Gov't Code Ann. § 25.0003(c)(1) (West Supp.1996).

10

(Tex.App.—Corpus Christi 1991, no writ).  In other words, to avoid the jurisdiction of the court, the claimant must affirmatively "plead[ ] himself out of court."  *Peek,* 779 S.W.2d at 804 (discussing *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836 (Tex.1967)).  *See also Pecos & N. Tex. Ry.,* 172 S.W. at 1105; *Taliancich,* 807 S.W.2d at 892.  Jones' allegations fall far short of affirmatively pleading an amount in excess of the county court's statutory maximum jurisdictional limit, and therefore the county court properly maintained jurisdiction over Jones' counterclaims.

### b. JPM and the state court action

JPM argues that the state court lacked jurisdiction over it with respect to SYC's intervention because SYC never served JPM with citation and process.  "Although the plaintiff is charged with notice of all pleadings filed in defense of his suit, he is entitled to notice of interventions and cross-actions affirmatively setting up causes of action against him, *and judgments rendered against him upon such interventions and cross-actions, in the absence of notice, waiver, or appearance, will be set aside.*" *Early v. Cornelius,* 120 Tex. 335, 39 S.W.2d 6, 8 (1931) (emphasis added).  *See also Mallia v. Bousquet,* 813 S.W.2d 628, 630 (Tex.App.—Houston [1st Dist.] 1991, no writ).  SYC admits on the face of its intervention petition that no service of process was made on JPM. Def.'s Summ.J.Ex.G at 1.  Thus, JPM's claim has merit unless it waived service or entered a general appearance in the intervention.

A party makes a general appearance whenever it invokes the

11

judgment of the court on any question other than jurisdiction. *St. Louis & S.F. R.R. v. Hale,* 109 Tex. 251, 206 S.W. 75 (1918); *Fridl v. Cook,* 908 S.W.2d 507, 515 (Tex.App.—El Paso 1995, writ requested); *Moore v. Elektro—Mobil Technik GmbH,* 874 S.W.2d 324, 327 (Tex.App.—El Paso 1994, writ denied). In determining whether conduct is sufficient to be considered a general appearance, the focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties. *Fridl,* 908 S.W.2d at 515. In response to SYC's intervention petition, JPM filed a Motion to Strike Intervention. In its motion, JPM asked the court to deny SYC the right to intervene because to do so would unnecessarily complicate the REG litigation and because SYC's claims should more properly be filed as counterclaims in the pending federal court action. JPM's motion to strike the intervention was an affirmative act recognizing the court's jurisdiction. *See, e.g., Fridl,* 908 S.W.2d at 515 (holding that motion to compel arbitration and to stay litigation was a general appearance). *See also National Union Fire Ins. Co. v. Pennzoil Co.,* 866 S.W.2d 248, 250 (Tex.App.—Corpus Christi 1993, no writ) ("We hold a motion to strike a plea in intervention akin to a special exception or to a motion for summary judgment, asserting that, as a matter of law, the opposing party could not have brought the action or would not be able to defeat recovery."). JPM, accordingly, entered a general appearance in the intervention, rendering service unnecessary. *See* Tex.R.Civ.P.Ann. r. 120 (West 1979). Hence, the state court had jurisdiction over JPM with respect to SYC's intervention, and its judgment thereon is

12

valid and binding on JPM.

## 2. Identity of parties

Having determined that both the state court and the county court were courts of competent jurisdiction, we turn to the second element of res judicata—identity of parties. That two separate judgments are interposed by SYC places this case in a novel light. Nonetheless, the identity of parties element is easily satisfied. "Identity of parties" requires that both parties to the current litigation be parties to the prior litigation or in privity with parties to the prior litigation. *See Coalition of Cities for Affordable Utility Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 563 (Tex.1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). In the state court action, SYC opposed JPM. JPM opposes SYC in the federal court action. In the county court action, SYC opposed Jones. In the federal court action, Jones opposes SYC. Thus, identity of parties exists with respect to each of the Texas court judgments.

## 3. Second action in which parties seek to adjudicate claims that were, or should have been, raised in prior action

Finally, res judicata applies if there is shown to be a second action in which the parties seek to adjudicate the same claims that were, or should have been, raised in the first action.

### a. Jones and the county court action

In the federal court action, Jones is suing SYC on theories of legal malpractice, negligence, malfeasance, gross negligence, fraud, conspiracy, and violations of the Texas Deceptive Trade Practices Act. When the allegations in Jones' first amended

13

complaint in the federal court action are compared with the allegations in his first amended original answer in the county court action, we see that the allegations are identical in all material respects. Further, we note that the county court specifically addressed Jones' counterclaims in issuing its judgment, making explicit findings of fact and conclusions of law adverse to Jones in every respect on the claims he asserted. Def.'s Summ.J.Ex.E at 8-15. As such, the doctrine of res judicata precludes Jones from relitigating in the federal court action the exact claims that were previously decided adversely to him in the county court action.[7]

### b. JPM and the state court action

Unlike Jones, JPM asserted no counterclaims against SYC in the state court action. Regardless, res judicata precludes JPM from pressing claims in the federal court action that, through the exercise of diligence, should have been litigated in the state court action. To determine what claims should have been litigated

---

[7]To thwart SYC's claim of res judicata, Jones refers us to § 31.004 of the Texas Civil Practice and Remedies Code. Section 31.004 limits the preclusive effect of judgments from courts of limited jurisdiction, such as county courts. Tex.Civ.Prac. & Rem.Code Ann. § 31.004 (West 1986). "[A] judgment rendered in a [county] court *is binding* on the parties thereto[, however,] as to recovery or denial of recovery." *Id.* (emphasis added). This language has been interpreted as giving res judicata effect to claims actually litigated in county court, but not as barring claims that might have been, but were not, brought in county court. *See Webb v. Persyn,* 866 S.W.2d 106 (Tex.App.—San Antonio 1993, no writ); *McClendon v. State Farm Mut. Auto. Ins. Co.,* 796 S.W.2d 229 (Tex.App.—El Paso 1990, writ denied). In this case, the identical claims raised by Jones in the federal court action were litigated and determined in the county court action. Consequently, § 31.004 poses no impediment to SYC's claim of res judicata.

14

in an earlier suit, Texas courts employ a "transactional approach." *Barr,* 837 S.W.2d at 631; *Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 798 (Tex.1992), *cert. denied,* --- U.S. ----, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993). This approach dictates that "[a] subsequent suit will be barred [by res judicata] if it arises out of the same *subject matter* of a previous suit." *Barr,* 837 S.W.2d at 631 (emphasis added).

> A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit.

*Id.* at 630. Borrowing from the Restatement (Second) of Judgments, which also employs a transactional approach, the *Barr* court stated that a "transaction" is not equivalent to a sequence of events; instead, the determination is to be made pragmatically, giving weight to whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Barr,* 837 S.W.2d at 631. The question then is whether JPM's claims in the federal court action arise out of the same subject matter or transaction that supported SYC's claims for fees in the state court action.

SYC's petition for intervention sought to recover the unpaid legal fees incurred by SYC in representing JPM in the REG litigation pursuant to the JPM/SYC agreement. SYC's recovery was based on sworn account, breach of contract, and quantum meruit

15

theories, and in support of its right to recovery SYC asserted that it "fully and completely performed pursuant to the contract." Def.'s Summ.J.Ex.G at 5. To such allegations, JPM responded through interrogatories as follows:

*INTERROGATORY NO. 9:*

Describe the nature of each category of any type of offset you [JPM] seek to assess against the monies sought to be recovered in the Petition in Intervention.

*ANSWER:*

Legal malpractice, negligence, gross negligence, fraud, and deceptive trade practices violations.

The state court, thereafter rendering judgment in SYC's favor, specifically found that SYC properly billed JPM pursuant to the agreement, and that "SYC fully performed the contract in a good and workmanlike manner consistent with the written contract and the expected standard of care for a lawfirm such as SYC." Def.'s Summ.J.Ex.F at 2.

JPM's complaints in the federal court action[8] mirror the defensive allegations raised by it in the state court action. Unlike in the state court action, JPM supports those complaints in the federal court action with factual allegations. Enlightened by these allegations, we discover that JPM's claims arise out of the events surrounding the JPM/SYC agreement and SYC's actions in representing JPM in the REG litigation in fulfillment of the terms

---

[8]Only one complaint, joined in by both JPM and Jones, was filed in the federal court action. Accordingly, the claims raised by JPM in the federal court action are identical to those raised therein by Jones, as discussed, *supra,* in part II.3a of this opinion.

16

of that agreement. More particularly, we learn that JPM's basic complaint is that the services rendered by SYC in the REG litigation were substandard. That JPM's complaints of inadequate performance arise from facts related in time and origin to facts underlying SYC's allegations of adequate performance and entitlement to payment is common sense. That these complementary assertions form a convenient trial unit is likewise undeniable. That JPM and SYC expected such complementary assertions to be litigated as a single trial unit is evidenced not only by SYC's interrogatory and JPM's response, but also by JPM's argument to the state court that intervention be denied because SYC's claims would be more appropriately litigated as counterclaims in the federal court action. Thus, JPM's current complaints in the federal court action arise out of the same subject matter or transaction that gave rise to SYC's claims in the state court action. As such, JPM's claims in the federal court action should have been raised originally in the state court action. Because JPM failed to raise these claims in the state court action, it is barred by the doctrine of res judicata from raising them now in this federal court action.

## III. CONCLUSION

Based on the foregoing discussion, we hold that Jones' and JPM's claims in the federal court action are barred by the doctrine of res judicata, and accordingly the district court's granting of summary judgment in favor of SYC is AFFIRMED.

17