**Sandra ROSAMOND, Plaintiff,**

v.

**PENNACO HOSIERY, INC., a DIVISION OF DANSKIN, INC., Defendant.**

**Civ. A. No. 3:95CV124–D–A.**

United States District Court,
N.D. Mississippi,
Western Division.

Oct. 2, 1996.

---

Lawrence J. Hakim, Charlie Baglan & Associates, Batesville, MS, for Plaintiff.

David P. Jaqua, Michael Farrell, Kullman, Inman, Bee, Downing & Banta, Memphis, TN, for Defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendant Pennaco Hosiery, Inc. ("Pennaco") for the entry of summary judgment on its behalf with regard to the plaintiff's claims at bar. Finding the motion only partially well taken, the court shall grant the motion in part and deny the motion in part.

### I. Factual Background

The defendant Pennaco Hosiery, Inc. ("Pennaco") hired the plaintiff as an employee on or about September 19, 1991. She worked at Pennaco's Grenada, Mississippi plant where she worked most recently as an "auto gusset operator," a position which involved constant repetitive motion of the upper extremities. While employed at Pennaco, the plaintiff developed bi-lateral carpal tunnel syndrome. Pennaco sent Ms. Rosamond to see Dr. Aubrey Lucas, who became the plaintiff's treating physician for this condition. Dr. Lucas treated the plaintiff from about September 28, 1993, until about April 6, 1995. During his course of treatment of the plaintiff, Dr. Lucas performed surgery on both of the plaintiff's hands in the fall of 1993.

After her surgery, the plaintiff never returned to full duty at her prior position for any extended length of time. For the next several months, Ms. Rosamond worked at her prior position (with imposed limitations) as well as other "light duty" positions within Pennaco. On or about April 18, 1994, the plaintiff reached "maximum medical recovery" in the opinion of Dr. Lucas. Apparently the plaintiff then attempted to return to full duty but could not. Dr. Lucas saw the plaintiff at least two more times prior to her termination by Pennaco. As a result of the first of these two visits, Dr. Lucas noted:

> The only thing I have left to offer her are indefinite restrictions.... These would be no repetitive and forceful work as described in the return to work slip. Whether or not Pennaco Hosiery can accommodate these restrictions is unknown.

Defendant's Exhibit B–17, Office note of Dr. Lucas dated 6/3/94. After the latter, Dr. Lucas observed:

> The patient freely admitted during her return to work attempts at Pennaco she was able to do all the work except lifting the heavy bags. The restrictions that I give below are some that the patient does not seem to use. *She can seek any and all employment if she would like since her nerve test is normal.* However, since she does have a diagnosis of carpal tunnel and it is presumed to come from the work at Pennaco I feel the advice to not do so much of that work is valid. For two thirds of the day she should avoid repetitive work. That is work which repeats itself every fifteen seconds or less. This applies to production line work and assembly line work and will apply to office work. I feel that the patient can perform any duties to office type. She can perform duties related to the fast food industry or restaurant work and again, *if she would like she can perform duties which are outside the scope of her restrictions.*

Defendant's Exhibit B–18, Office note of Dr. Lucas dated 8/15/94 (emphasis added). As of June 3, 1994, Pennaco placed the plaintiff on medical leave. While on medical leave, the plaintiff applied for two other positions with Pennaco—one in customer service and one as a quality monitor. Pennaco did not hire her for either position. The next year, Pennaco notified the plaintiff by letter that she was terminated from her employment with Pennaco effective June 3, 1995. Stated as justification for the termination was that Ms. Rosamond had exceeded the company's policy of a one year maximum limitation on medical leave.

### II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

### III.  The Plaintiff's Claims

#### A.  The Americans With Disabilities Act

■ The plaintiff in the case at hand asserts a claim under the Americans With Disabilities Act ("ADA"). The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Interpretation and precedent relevant to the Rehabilitation Act is equally applicable to the ADA. *See, e.g., Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir. 1993). For the plaintiff to establish[1] her claim of discrimination in employment under the ADA, the three-tier *McDonnell–Douglas* standard is utilized: 1) the plaintiff must establish a *prima facie* case of discrimination, 2) the burden then shifts to the defendant to articulate a legitimate and nondis-

criminatory reason for its actions, and 3) the burden returns to the plaintiff to prove that the proffered reason was a mere pretext for discrimination and that the real reason was to discriminate. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Polanco v. City of Austin,* 78 F.3d 968, 976 (5th Cir.1996); *Marcantel v. Louisiana Dep't of Trans. & Dev.,* 37 F.3d 197, 199 (5th Cir.1994).

■ In order to establish a *prima facie* case under the ADA, the plaintiff must show:

1) that she suffers from a "disability";

2) that she is a "qualified individual" for the position; and

3) that she suffered an adverse employment action because of her disability.

*Stradley v. Lafourche Communications,* 869 F.Supp. 442 (E.D.La.1994) (citing *Chandler,* 2 F.3d at 1390). For summary judgment purposes, the plaintiff need only present sufficient evidence to create a genuine issue of material fact as to each of these elements. *Chiari v. City of League City,* 920 F.2d 311, 315 (5th Cir.1991). In the case at bar, the defendant centers its argument entirely upon the first factor of the *prima facie* case—the plaintiff's "disability." It is this factor, then, that the court will address.

#### 1.  Does the Plaintiff suffer from a disability?

■ In order to be protected under the Rehabilitation Act, and likewise the ADA, a person need not have a "traditional" handicap. *Walker v. Aberdeen–Monroe County Hosp.,* 838 F.Supp. 285, 288 (N.D.Miss.1993). A person is considered "disabled" under the ADA if that person:

1) has a physical or mental impairment that substantially limits one or more of the major life activities of [the plaintiff];

2) has a record of such impairment; or

3) is regarded as having such an impairment.

---

1. The *McDonnell–Douglas* shifting burden of proof is applied by the court to determine the legal sufficiency of the plaintiff's claims. If the plaintiff's claims proceed to be considered by the jury, the only issues to be submitted to the fact-finder will be the ultimate question of discrimination *vel non* and the resulting damages. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996); *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1089 (5th Cir.1995).

42 U.S.C. § 12102(c); *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir.1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996). In the case at bar, the plaintiff argues that she not only meets one of the requirements, but that she meets all three of them. However, it is only incumbent upon this court to determine if enough evidence was presented to raise a genuine issue of material fact on any one of the three methods by which the plaintiff may prove that she is disabled. Thankfully, the text of the statute is not the only source of direction for this court in determining whether the plaintiff is "disabled" under the ADA. The United States Supreme Court directs this court to the applicable regulations created for the implementation of the ADA.[2] *School Board of Nassau County v. Arline*, 480 U.S. 273, 280, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987). A relevant regulation[3] provides that a "major life activity" is a "function such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see Chandler*, 2 F.3d at 1390 (quoting 45 C.F.R. § 84.3(j)(2)(ii) (1992)). The meat of the defendant's argument is that the plaintiff is unable to demonstrate that she possesses impairments that substantially limit the "major life activity" of working. As the plaintiff notes, the defendant does not address other "major life activities" that might be substantially limited by plaintiff's impairments, nor does it discuss the other available avenues by which the plaintiff may demonstrate that she is disabled within the context of the ADA.

It must also be noted that the plaintiff alleges that even if she was not sufficiently physically impaired as required under the ADA, then the defendant regarded her as being so impaired. The facts reflect that the defendant was aware of the plaintiff's injury and that she has quite an extensive history of injuries. After a review of the submissions of the parties, the undersigned is of the opinion that there are genuine issues of material fact as to this element of the plaintiff's ADA claim. There is sufficient evidence to support a finding that the plaintiff is "disabled" as contemplated under the ADA, and the determination is a question of fact to be decided at trial. *See Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808, 814 (N.D.Tex.1994). Summary judgment on this issue would also be inappropriate because the plaintiff has presented circumstantial evidence to support a finding that the defendant regarded the plaintiff as disabled, and this matter should be determined at trial by a trier of fact.

### 2. Is the Plaintiff a "Qualified Individual?"

The parties do not really address this provision of the plaintiff's claim, and the court is left with the impression that the parties are in agreement that the plaintiff was incapable of performing her job due to her medical problems. Defendant's Brief, p. 4 ("Pennaco does not dispute that Ms. Rosamond could not perform the job of auto gusset operator."); Plaintiff's Brief, p. 6 ("Defendants do not dispute that Plaintiff could not perform the job of gusset operator ..."). Inability to "do the job" because of the disability is not a requirement for recovery under the ADA. On the contrary, the ability to perform the essential functions of an employee's job is an absolute prerequisite to the viability of a claim under the ADA. *Bradley v. University of Texas M.D. Anderson Cancer Center*, 3 F.3d 922, 924 (5th Cir.1993). Even though reasonable accommodation[4] may be required by the em-

---

**2.** *But see Coghlan*, 851 F.Supp. at 812 (agency interpretative guidelines not binding upon court).

**3.** *See* 29 C.F.R. § 1630, et seq. For further discussion of the pertinent regulations, *see* Robert L. Mullen, *The Americans With Disabilities Act: An Introduction For Lawyers and Judges*, 29 Land & Water L.Rev. 175 (1994).

**4.** Accommodation need not only be modification of the conditions of the plaintiff's present position. Reassignment to another job may be a

reasonable accommodation if that position exists and is open. *Daugherty v. City of El Paso*, 56 F.3d 695, 699 (5th Cir.1995); *McAlpin v. National Semiconductor Corp.*, 921 F.Supp. 1518, 1525 (N.D.Tex.1996). However, the employer is not required to create a new job, displace another employee, promote the plaintiff or give the disabled employee priority in hiring or reassignment over applicants who are not disabled. *Daugherty*, 56 F.3d at 699–700; *Howard v. North Mississippi Medical Ctr.*, 939 F.Supp. 505, 510 (N.D.Miss.1996).

ployer in order for the employee to properly perform, it is ultimately the ability to complete the required tasks that is important:

> To determine whether an individual is otherwise qualified for a given job, we must conduct a two-part inquiry. First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions. As with establishing the existence of a handicap, the burden lies with the plaintiff to show that he is otherwise qualified.

*Chandler,* 2 F.3d at 1393–94; *Chiari v. City of League City,* 920 F.2d 311, 317 (5th Cir. 1991). All in all, a "qualified" individual is one who can perform all the requirements of her job **in spite of** her handicap. *See Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). As noted, the defendant did not address this issue in its motion, and therefore has not carried its burden to demonstrate that it is entitled to summary judgment. In any event, from the pleadings and other matters submitted, it is unclear to the court exactly what functions of the plaintiff's prior job were "essential" to that position, and whether the plaintiff was actually capable of performing those functions with reasonable accommodations by the defendant. The matter is best determined at the trial of this cause.

### B. State Law Claims

#### 1. Article VII, § 191 of the Mississippi Constitution

By stipulation filed with the court on September 17, 1996, the parties agreed to the dismissal of this claim of the plaintiff, and it is no longer pending before this court. The undersigned does note, however, that this court has previously discussed the viability of this type of claim. *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 984 (N.D.Miss.1996); *Cooper v. Drexel Chemical Co.,* Civil Action No. 2:95cv092–D–B [1996 WL 728694] —— F.Supp. —— (N.D.Miss. Apr. 18, 1996) (Memorandum Opinion and Order granting motion for summary judgment). Without belaboring the point, this court has found that § 191 of Article VII of the Mississippi Constitution is not self-enacting, but rather is only enforceable under its enacting legislation, Miss.Code Ann. § 79–1–9 (Supp.1995). *Cooper, supra,* at 11–12.

#### 2. Wrongful Discharge

The plaintiff also seeks to maintain a state law action for wrongful discharge based upon her termination. Mississippi follows the "at-will" employment doctrine and has done so for over 100 years. *Butler v. Smith & Tharpe,* 35 Miss. (6 Geo.) 457 (1858). In the absence of a contract of employment for a specified term, all employees are deemed to be at-will. *Solomon v. Walgreen Co.,* 975 F.2d 1086, 1089 (5th Cir.1992); *Franks v. Magnolia Hosp.,* 888 F.Supp. 1310, 1313 (N.D.Miss.1995); *Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874, 875 (Miss. 1981). Thus, Pennaco could fire Ms. Rosamond "for a good reason, a wrong reason, or for no reason at all." *Burroughs v. FFP Operating Partners,* 28 F.3d 543, 547 (5th Cir.1994); *Berry v. Liberty Nat'l Life Ins. Co.,* 879 F.Supp. 44, 45 (S.D.Miss.1995); *Kelly,* 397 So.2d at 875. When there exists no independent consideration, employment "is terminable at the pleasure of either party." *Glasgow v. Sherwin Williams Co.,* 901 F.Supp. 1185, 1191 (N.D.Miss.1995). The at-will employment rule is not absolute, however. There are two public policy exceptions to the rule, and an employee may not be fired for 1) refusing to commit an illegal act for his employer; or 2) reporting an illegal act of his employer to authorities. *Willard v. Paracelsus Health Care Corp.,* 681 So.2d 539, 542 (Miss.1996); *McArn v. Allied–Terminix,* 626 So.2d 603, 606 (Miss.1993). In the absence of the application of one of these exceptions, the at-will employment doctrine precludes actions for breach of contract or retaliatory discharge. *McArn,* 626 So.2d at 607; *Coats v. Penrod Drilling Corp.,* 785 F.Supp. 614, 625 (S.D.Miss.1992).

Ms. Rosamond contends that she does in fact meet one of these public policy

exceptions—that of reporting illegal acts to the proper authorities. It is her contention that this exception applies not only to reports of criminal illegality, but also to reports of civil illegality. In this case, she contends, she reported a violation of ADA to the Equal Employment Opportunity Commission and as a result was terminated by the defendant. The defendant takes the position that this public policy exception applies only to reports of criminal illegality, but offers this court no authority for that proposition.

In every decision where this exception has been applied, criminal illegality was indeed the issue. *E.g., Willard,* 681 So.2d at 542 (forgery); *McArn,* 626 So.2d at 606 (receiving money under false pretense; violation of state pest control regulations); *Laws v. Aetna Finance Co.,* 667 F.Supp. 342, 343–44 (N.D.Miss.1987) (Truth-in-Lending Act; Small Loan Regulatory Law). Nevertheless, the Mississippi Supreme Court in both *McArn* and *Willard* has chosen to use the word "illegal" instead of "criminal" when delineating this public policy exception to the at-will employment rule. *Willard,* 681 So.2d at 542; *McArn,* 626 So.2d at 606. Further, as the plaintiff notes, the court in *McArn* indicated that there were indeed additional, but as yet undetermined, exceptions to the at-will employment doctrine under Mississippi law. *McArn,* 626 So.2d at 607 ("We are of the opinion that there should be *at least* two [exceptions] . . .") (emphasis added).

This court's *Erie*-guess in *Laws* ultimately proved to be correct, and the Mississippi Supreme Court did in fact recognize that exceptions existed to the at-will employment rule. This time, however, the undersigned is of the opinion that if faced with the question presently before this court, the Mississippi Supreme Court would not expand the exceptions so that the plaintiff in this case would be allowed to maintain an action for wrongful discharge. It is axiomatic that the entire purpose of the creation of such "public policy" exceptions is to further the public policy

of the state of Mississippi. As noted by this court in *Laws,* the public policy furthered by the current exceptions to Mississippi's at-will employment doctrine is the state's interest in promoting compliance with the law. *Laws,* 667 F.Supp. at 348. The state's purpose of encouraging compliance with the law is frustrated when employees are subjected to the threat of losing their employment without legal remedy when asked to 1) break the law for their employer, or 2) not to report their employer's illegal conduct:

> If we are to have a law, those who so act against the public interest must be held accountable for the harm inflicted thereby; to accord them civil immunity would incongruously reward their lawlessness at the unjust expense of their innocent victims.

*Laws,* 667 F.Supp. at 348 (quoting *Sides v. Duke Univ.,* 328 S.E.2d 818, 826 (N.C.App. 1985)). The refusal to extend protection under state law in this case does not frustrate public policy, however, for the plaintiff already has an adequate remedy for her termination in this context. The plaintiff argues:

> Under the facts of the instant case, plaintiff squarely fits within the second exception. While Plaintiff was employed with the Defendants herein, she reported Defendants' illegal actions, being violations of the ADA, to the appropriate government agency, which was the EEOC. It wasn't until after the Plaintiff's EEOC affidavit and charge of discrimination had been filed, and notice of the charges forwarded to Defendants that Plaintiff was terminated.

Plaintiff's Brief in Response to Defendant's Motion, p. 19. If the plaintiff proves this allegation, she is entitled to recovery for retaliatory discharge in violation of the ADA. 42 U.S.C. § 12201; *Washington v. HCA Health Serv.,* 906 F.Supp. 386 (S.D.Tex.1995). There would be no need to extend the exception in this case because existing law already protects the public policy at issue.[5] *See, e.g., Provens v. Stark Cty. Bd. of Mental Retar-*

---

5. This court is not finding that the ADA preempts other potential state law remedies for discrimination. *E.g., Mangin v. Westco Security Systems, Inc.,* 922 F.Supp. 563, 566 (M.D.Fla. 1996) (finding ADA does not preempt certain state law claims). Rather, the court finds that the existence of a remedy under the ADA obviates the underlying public policy need for further modification of the venerable Mississippi at-will employment doctrine.

*dation & Developmental Disabilities,* 64 Ohio St.3d 252, 594 N.E.2d 959 (1992) (no exception to at-will doctrine when violated statute provides adequate civil remedy); *Nolting v. National Capital Group, Inc.,* 621 A.2d 1387, 1389 (D.C.App.1993) (same); *Sands Regent v. Valgardson,* 105 Nev. 436, 777 P.2d 898, 899–900 (1989) (same).

> It is clear then that the whole rationale undergirding the public policy exception (to termination at will) is the vindication or the protection of certain strong policies of the community, if these policies or goals are preserved by other remedies, then the public policy is sufficiently served. Therefore, application of the public policy exception requires two factors: (1) that the discharge violates some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.

*Faulkner v. Sikorsky Aircraft,* 1994 WL 133435, *2 (Conn.Super. Mar. 30, 1994) (citing *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1055 (E.D.Pa.1977)).

> The exception to the at-will doctrine created by statute contains its own remedy. To permit the possibility of common-law damages for the act of termination, whether considered by itself or in conjunction with other "conduct," impermissibly enlarges the remedy beyond the limits set by the legislature.

*Sebesta v. Kent Electronics Corp.* 886 S.W.2d 459, 463 (Tex.Ct.App.1994). This court is of the opinion that if the Mississippi Supreme Court were faced with the case at bar, it would agree with the reasoning espoused by these courts. As the plaintiff already has a legal remedy for the alleged wrongful acts in question, no reason exists to extend Mississippi's public policy exceptions to the at-will employment rule to allow recovery for wrongful termination in this case.

The Mississippi Supreme Court might indeed determine that, under different circumstances, the at-will employment exceptions regarding "illegal" conduct encompass civil as well as criminal illegality. However, considering the particular facts of the case at bar, the undersigned is of the opinion that the Mississippi Supreme Court would not do so in this context. The motion of the defendant shall be granted at to this claim of the plaintiff. There is no genuine issue of material fact as to this matter, and the defendant is entitled to the entry of a judgment as a matter of law on this claim.

### 3. Intentional and Negligent Infliction of Emotional Distress

The defendant also seeks summary judgment as to the plaintiff's state law claims of intentional and negligent infliction of emotional distress. It does not, however, devote much of its brief to this issue:

> Ms. Rosamond has also filed a claim for negligent and intentional infliction of emotional distress "because of the outrageous commissions and omissions of acts by the defendants herein." Complaint ¶ 17. That paragraph does not allege any specific acts. Elsewhere throughout the complaint, the plaintiff alleges that she was terminated in violation of the ADA and also was denied a transfer to other jobs. See Complaint ¶ 10, 13. However, since the plaintiff did not allege any acts which on their face constitute intentional, malicious or wanton conduct, Pennaco requests summary judgment on this claim.

Defendant's Brief, p. 12. The plaintiff failed to address these claims in her response to the motion, and the defendant has filed no rebuttal. Other than the plaintiff's "failure" to allege in her complaint specific acts which support these claims, the defendant does not set forth any reasons why the plaintiff is not entitled to pursue these claims at trial. The plaintiff is not required to set forth in her complaint the specific acts underlying her claims, but rather need only provide the defendant with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The defendant has had ample opportunity in discovery to determine the particular grounds upon which the plaintiff relies for her claims in this regard. It could have then argued against those asserted grounds in its motion for summary judgment. Nevertheless, it failed to do so. As already noted by this court, the fact that the plaintiff may not be able to prevail on her claims at trial does not mean that the defendant is presently entitled to the entry

of a judgment as a matter of law. The court finds that the defendant has failed to carry its burden of proof to show that "there is no genuine issue as to any material fact and that [it] is entitled to the entry of a judgment as a matter of law." Fed.R.Civ.P. 56.

### CONCLUSION

In that the plaintiff has presented sufficient evidence to this court to create genuine issues of material fact concerning her claim arising under the ADA, a grant of summary judgment on those claims would be improper at this juncture. Additionally, the defendant's motion shall be denied as to the plaintiff's state law claims of intentional and negligent infliction of emotional distress. However, as the plaintiff has failed to state a cause of action for wrongful termination under state law, that claim shall be dismissed. The defendant's motion will be granted in part and denied in part.

A separate order in accordance with this opinion shall issue this day.