**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 8, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-60238

Summary Calendar

_____

JIMMY HOWELL

        Plaintiff - Appellant

    v.

OPERATIONS MANAGEMENT INTERNATIONAL INC; CHRIS HOLLOWAY

        Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:00-CV-16-D-D

_____

Before KING, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

    Plaintiff Jimmy Howell appeals the district court's grant of

summary judgment in favor of the defendants on Howell's claims of

wrongful discharge and defamation.  For the following reasons, we

AFFIRM.

---

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Operations Management International, Inc. ("OMI") employed Jimmy Howell on an at-will basis at its water treatment plant in Tupelo, Mississippi. Chris Holloway, the second defendant in this case, was Howell's supervisor at the plant. In September 1999, Howell filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging numerous safety violations at the Tupelo facility. Howell was suspended without pay in November of that year, and OMI ordered him to participate in its Employee Assistance Program ("EAP") to receive psychiatric counseling. OSHA reported on December 2, 1999, that no violations could be documented for the items about which Howell had complained, though OSHA did cite OMI for an unrelated safety violation. Howell filed a second OSHA complaint on December 17, 1999, which alleged further safety violations, but OSHA reported in a letter dated January 18, 2000, that no violations could be documented. Howell filed a third OSHA complaint on January 28, 2000, which claimed that OMI had placed him in EAP in retaliation for his safety complaints. The EAP psychiatrist cleared Howell to return to work in February 2000, but before he returned to regular duty OMI suspended him indefinitely and without pay.[1] OSHA had not issued a ruling on

_____

[1] Although Howell was not finally terminated until after the conclusion of proceedings below, the district court and the parties have treated the February 2000 suspension as a termination.

Howell's third complaint as of the date that the defendants moved for summary judgment.[2]

Howell sued OMI and Holloway in the district court under several theories of liability, including defamation and wrongful discharge. Howell's defamation claim stems from allegations that the defendants: (1) falsely reported him and his daughter to the police for ordering and then stealing a dangerous chemical, and (2) told other OMI employees that he had attempted to sabotage the plant.[3] The wrongful discharge claim is premised on a theory of retaliatory termination in violation of state public policy. The defendants filed a motion for summary judgment on these claims, which the district court granted. The district court found that Howell's defamation claim failed because the defendants' statements were protected by qualified privilege. On the wrongful discharge claim, the district court read Mississippi law as protecting at-will employees from being terminated in retaliation for reporting their employer's criminally illegal acts, but not for reporting violations of the type represented by Howell's safety complaints. After the district court's ruling, Howell voluntarily dismissed his one remaining claim. The

---

[2] The defendants' appellate brief claims that OSHA determined in July 2001 that there was no basis for Howell's retaliation complaint. This was not before the district court and thus is not part of our decision.

[3] The district court also considered, and rejected, a third alleged instance of defamation, but Howell does not pursue it on appeal.

district court then entered a final judgment against Howell on all counts, and Howell now appeals.

## II. DISCUSSION

### A. Standard of review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. See Vela v. City of Houston, 276 F.3d 659, 666 (5th Cir. 2001). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. Defamation

Howell's defamation claim is based upon allegations that the defendants falsely reported him and his daughter to the police for stealing a dangerous chemical and falsely told OMI employees that he had tried to sabotage the Tupelo plant. The district court found that both statements were protected by qualified privilege.

Two separate privileges are involved in this case. First, under Mississippi law, a qualified privilege shields statements made to law enforcement officers concerning a suspected crime. See Downtown Grill, Inc. v. Connell, 721 So. 2d 1113, 1119-21 (Miss. 1998). Second, the Mississippi courts also hold that "an employer enjoys a qualified privilege when commenting on personnel matters to those who have a legitimate and direct

4

interest in the subject matter of the communication." Bulloch v. City of Pascagoula, 574 So. 2d 637, 642 (Miss. 1990). This qualified privilege has been held to apply to supervisors' statements to employees regarding a fellow employee's possible misconduct. See Esmark Apparel v. James, 10 F.3d 1156, 1161-62 (5th Cir. 1994); Hayden v. Foryt, 407 So. 2d 535, 536-38 (Miss. 1981).

Statements within the scope of these qualified privileges cannot give rise to defamation liability unless the speaker acts with malice, and the plaintiff has the burden of overcoming a presumption that the statements were made in good faith. Esmark, 10 F.3d at 1162; Benson v. Hall, 339 So. 2d 570, 572 (Miss. 1976).

The defendants asserted both privileges in their motion for summary judgment. In response, Howell did not direct the district court to any specific record evidence showing that Holloway acted maliciously and in bad faith in informing the police of the disappearance of the chemical. He did point out, however, that Holloway and Howell's daughter were the only persons with access to the materials needed to order the chemical. Since Howell's daughter had sworn that she was not involved, Howell intimated that Holloway may have accused the Howells in order to cover up the fact that Holloway was in fact responsible for ordering the chemical. This theory was accompanied by a general reference to "the Plaintiff's evidence,"

5

but Howell did not cite specific record evidence to support it.

On appeal, Howell contends that the essence of his case is that Holloway engaged in a malicious scheme against him, thus obviating the need to direct the district court to particular evidence bearing on Holloway's motivation in reporting Howell to the police. While Howell is certainly correct that his case is premised upon accusations of bad faith on the defendants' part, that is not enough to withstand a motion for summary judgment. Once the defendants met their initial burden of showing the absence of any genuine issue of material fact with respect to qualified privilege, the burden shifted to Howell to "designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). As we have stated, Howell did not cite any record facts showing that Holloway had acted in bad faith. The district court was under no duty to sift through the record in order to find for itself those facts (if any) that might discharge Howell's burden. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). Howell therefore failed to carry his burden of showing a genuine issue of fact with respect to this instance of alleged defamation.

The same considerations apply with even greater force to Howell's claim that Holloway defamed him by telling other workers at the plant that Howell engaged in sabotage. Howell's memorandum in opposition to the defendant's motion did not even

6

refer to this instance of alleged defamation.  As discussed above, Mississippi law presumes that Holloway's comments regarding employee misconduct were made in good faith.  Since Howell did not point to any specific facts that would rebut this presumption, the district court properly granted summary judgment here as well.

Although we are not required to examine portions of the record not properly put before the district court, see Jones, 82 F.3d at 1338, our own review of the record further convinces us that the decision below was correct.  The portions of the record that relate to Howell's defamation claims do not contain evidence that supports the broad accusations made in Howell's briefs.  It is evident from Howell's deposition that he would testify that he had nothing to do with the incidents that led to Holloway's suspicions of theft and sabotage.  This does not show, of course, that Holloway's statements were made with malice.  Howell's theories about Holloway's intentions cannot, without more, rebut the presumption of good faith so as to avoid summary judgment. See, e.g., Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449-50 (5th Cir. 1993) (stating that conclusory assertions of bad faith cannot create a genuine issue of fact).

## C.  **Wrongful discharge**

Although Mississippi law generally permits employers to terminate their at-will employees for any reason, the Mississippi

Supreme Court created a "narrow public policy exception" to that rule in McArn v. Allied Bruce-Terminix Co. Inc., 626 So. 2d 603, 607 (1993).  The exception creates a tort action in favor of an at-will employee who is discharged for "refus[ing] to participate in an illegal act" or for "reporting illegal acts of his employer."  Id.

McArn itself involved a criminal act, and the Mississippi Supreme Court's statement of the issue on appeal was phrased in terms of "paticipat[ion] in criminal activity."  Id. at 604, 606. Howell did not assert before the district court that his OSHA complaints, had they found been found meritorious, would have amounted to reports of criminal acts.[4]  Howell has not shown us, and we have not found, any Mississippi cases indicating that the McArn exception applies to regulatory violations of the sort

---

[4]     On appeal, Howell claims that OMI also retaliated against him for making complaints about environmental violations at the plant.  This contention was not properly before the district court, however, as the argument in Howell's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment concerned only the claim that the defendants retaliated against him because of his OSHA complaints.  It stated that "Defendant's reason for not allowing [Howell] to return to work is because of the complaint he made to OSHA" and that "the Defendant is angry about Plaintiff's complaint to OSHA."  The only reference to environmental complaints was a one-sentence footnote in the "Facts" section of his memorandum, which referred to a section of Howell's deposition recounting an incident in which Holloway changed Howell's work assignment (though not his pay) after Howell criticized Holloway's procedures for performing fecal count tests.  Even if the issue of environmental complaints had been properly raised below, Howell has not explained how this incident would fit within the McArn exception.  The basis of the district court's ruling, of course, was that the McArn exception reaches only reports of criminal illegality.

8

involved in Howell's OSHA complaints.[5]  Our own court's prior

cases involving the McArn exception have involved criminal

illegality.  See Nuwer v. Mariner Post-Acute Network, 332 F.3d

310, 314-15 (5th Cir. 2003) (criminal statute prohibiting false

statements in connection with federal health programs); Drake v.

Advance Constr. Serv., Inc., 117 F.3d 203, 204 (5th Cir. 1997)

(criminal statute prohibiting false statements to federal

agencies).  In this case, the district court relied on a line of

cases from the federal district courts in Mississippi that have

expressly limited the McArn exception to criminal illegality.

See Howell v. Operations Mgmt. Int'l, Inc., 161 F. Supp. 2d 713,

719 (N.D. Miss. 2001) (citing cases).

Given the evident limitations on the McArn exception, we do

not see a legal basis for Howell's claim.  Since almost every

---

[5]    In arguing that the McArn exception is not limited to
criminal illegality, Howell cites Paracelsus Health Care Corp. v.
Willard, 754 So. 2d 437 (Miss. 1999), which involved a challenge
to jury instructions on punitive damages in a retaliatory
discharge case.  The defendant argued that the jury must find
that a crime had been committed in order to award punitive
damages.  Id. at 442-43.  The court rejected that argument,
saying that its cases did "[not] suggest that the plaintiff must
first prove that a crime was committed."  Id. at 443.  Howell
interprets this statement to mean that the employee's complaints
need not involve criminal conduct.  As we read Paracelsus,
however, the court said merely that a plaintiff claiming
retaliatory discharge in violation of McArn need not prove to the
jury that the employer had actually committed the crime that the
employee reported.  The court did not, as Howell suggests, say
that McArn embraced non-criminal violations of law.  In fact, as
a previous appeal in the same case makes clear, the defendants'
alleged wrongdoing included forgery, a crime.  See Willard v.
Paracelsus Health Care Corp., 681 So. 2d 539, 542 (Miss. 1996).

9

aspect of the workplace is governed by regulations of some sort, expanding the McArn exception to encompass the alleged violations urged by Howell would work a significant change in Mississippi labor law.  Howell has not persuaded us that it is proper to widen the "narrow public policy exception" described in McArn, 626 So. 2d at 607.  His invitation is especially inappropriate given that OSHA can take action against employers who terminate employees in retaliation for filing safety complaints.  See 29 U.S.C. § 660(c) (2000); see also Rosamond v. Pennaco Hosiery, Inc., 942 F. Supp. 279, 286-87 (N.D. Miss. 1996) (explaining that the McArn public policy exception is not necessary when the law already provides a means of protecting employees from retaliation).

### III.  CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.