Michelle CARLSON, Plaintiff,

v.

ROCKWELL SPACE OPERATIONS COMPANY, Defendant.

Civil Action No. H–94–1828.

United States District Court, S.D. Texas, Houston Division.

Oct. 15, 1996.

---

Michael William Kerensky, Kerensky Law Firm, Houston, TX, for Michelle Carlson.

Gary David Eisenstat, Figari & Davenport, Dallas, TX, for Rockwell Intern. Corp.

Di Ann Sneed, Houston, TX, for Jesse Castillo.

### *MEMORANDUM AND ORDER*

ATLAS, District Judge.

Plaintiff filed this suit against Rockwell Space Operations Company ("RSOC"), Rockwell International Corp. ("Rockwell International") and Jesse Castillo ("Castillo"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as well as intentional infliction of emotional distress, assault, and negligent hiring, training and supervision.[1] Each of the three Defendants has filed a motion for summary judgment[2] The Court has considered the motions, the responses and replies, the relevant authorities, and all other matters of record in this case.

1. Thad Carlson was previously a second Plaintiff in this action; however, on August 23, 1995, Mr. Carlson informed the Court that he no longer wanted to pursue his claims, and he was dismissed as a Plaintiff.

2. *See* RSOC's Motion for Summary Judgment [Doc. # 35] ("RSOC's Motion"); Rockwell International Corporation's Motion for Summary Judgment [Doc. # 38] ("Rockwell International's Motion"); Jesse Castillo's Motion for Summary Judgment [Doc. # 39] ("Castillo Motion").

At a Pretrial Conference on August 15, 1996, this Court stated that it was granting summary judgment in favor of all claims against Defendants Castillo and Rockwell International. RSOC's Motion for Summary Judgment also was granted in part, as to Plaintiff's claims of intentional infliction of emotional distress and assault. The Court reserved ruling on all other causes of action pending against RSOC, *i.e.*, Title VII hostile environment, *quid pro quo* discrimination, retaliation, and negligent hiring, training and supervision. Since the Pretrial Conference, the parties have, as directed, filed supplemental briefing on specific questions posed by the Court. This opinion sets forth in more detail the grounds articulated by the Court as to the claims dismissed at the Pretrial Conference and addresses all remaining causes of action. For the reasons stated herein, RSOC's Motion, Rockwell International's Motion, and Castillo's Motion all are **GRANTED**.

In addition, RSOC and Rockwell International have filed a Motion to Strike Carlson's Summary Judgment Evidence [Doc. # 52] ("Motion to Strike"). These objections largely are moot because summary judgment is being granted in favor of Defendants, despite Plaintiff's evidence. Where material and valid objections exist, the Court makes note hereafter.[3] Thus, as noted by separate order,[4] the Motion to Strike is **GRANTED IN PART**.

RSOC has filed a Motion to Show Cause [Doc. # 86] why Carlson should not be held in contempt of Court for allegedly failing to comply with an Order of this Court to produce specific evidence. The Motion to Show Cause is **DENIED**.

3. Much of Plaintiff's evidence, most importantly her affidavit and personal diary, is cited throughout this opinion as though the evidence is credited. The discussion of Plaintiff's evidence is in no way a ruling that the evidence is admissible. Rather, the Court has concluded that, even if all of Plaintiff's evidence were admissible and accepted as true, Plaintiff still is unable to defeat Defendants' summary judgment motions.

4. *See* Doc. # 90.

## FACTUAL BACKGROUND

Carlson began working for RSOC in 1990, working on and implementing programs which trained the astronauts flying the space shuttle.[5] Defendant Jesse Castillo already was employed at the same division of RSOC. Carlson states that Castillo had previously harassed other women, including her supervisor, Illiana Molina, and that, upon her arrival, she "encountered a hostile situation which had previously developed" between Castillo and Molina.[6] She further states that this problem had existed for several years and was "widely known" throughout RSOC.[7] Shortly after she began her employment at RSOC, Carlson states that she attended a meeting called by Molina to discuss how best to handle the situation with Castillo, and stated her opinion that treating Castillo with kindness would be the best policy and would further her work objectives.[8]

Carlson's work required her to work directly with Castillo.[9] She claims that Castillo supervised her work, and did her performance appraisals.[10]

Carlson alleges that Castillo soon tried to take his relationship with Plaintiff "into something more than a work relationship" by writing her personal notes, letters, and poetry, inviting her to lunch, attempting to have a personal relationship with her, and calling her at home.[11] However, Carlson stated in her deposition that Castillo never suggested a physical relationship, never touched her in an unwelcome way, never told her that she would not get a raise or promotion if she did not have sexual relations with him, and never made crude or offensive jokes that were unwelcome.[12]

Carlson states that, apparently in 1992, she requested that Castillo stop bothering her, and that their relationship be limited to work.[13] In November 1992, Carlson and Castillo had lunch and Carlson confided in Castillo about some personal and health problems. In mid 1992, Carlson was diagnosed with systemic lupus and was required by her physicians to reduce the stress in her life.[14] Around the same time, Carlson sought psychiatric treatment, apparently because she was contemplating suicide due to her poor health and an insurance dispute.[15] Be-

5. Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 79] ("Plaintiff's RSOC/Castillo Response"), at 2.

6. *Id;* Affidavit of Michelle Carlson (attached to Plaintiff's RSOC/Castillo Response) ("Carlson Affidavit").

7. Carlson Affidavit, at 1–2; Plaintiff's RSOC/Castillo Response, at 2. Carlson states that Molina attributed statements to Castillo that he had dated every woman he had ever worked with. Plaintiff's RSOC/Castillo Response, at 5; Molina Deposition (Exhibit 8 to Plaintiff's RSOC/Castillo Response), at 22. Carlson also refers to unauthenticated and unidentified handwritten notes which may support this statement. *See* Exhibit 4 to Anderson Deposition (Exhibit 9 to Plaintiff's RSOC/Castillo Response). However, these documents lack adequate foundation and are inadmissible hearsay. *See* Fed.R.Evid. 802, 803, and 805.

8. Plaintiff's RSOC/Castillo Response, at 3; Carlson Affidavit, at 2.

9. *Id.*

10. Plaintiff's RSOC/Castillo Response, at 3; Exhibit 2 to Plaintiff's RSOC/Castillo Response (*inter alia,* Castillo's evaluations of Carlson from 1991 and 1992).

11. Plaintiff's RSOC/Castillo Response, at 3; Carlson Affidavit, at 2; Exhibit 3 to Plaintiff's RSOC/Castillo Response (letters from Castillo to Carlson). While Carlson does not provide dates for the advent of Castillo's allegedly offensive behavior, it appears, based on the chronology of Carlson's Affidavit, to be early 1992.

12. Castillo Motion, at 4; Deposition of Michelle Carlson (Exhibit # 13 of Appendix in Support of the Motions for Summary Judgment of RSOC and Rockwell International [Doc. # 37] ("Rockwell Appendix")) ("Carlson Deposition"), at 1012.

13. Plaintiff's RSOC/Castillo Response, at 3; Carlson Affidavit, at 2–3. Carlson claims that a handwritten note, apparently written by Castillo, reflects this request. The note states "I know you told me to leave you alone but I can't, so sue me." Exhibit 3 to Plaintiff's RSOC/Castillo Response.

14. Plaintiff's RSOC/Castillo Response, at 4; Carlson Affidavit, at 3.

15. Castillo Motion, at 5; Carlson Deposition, at 372–73, 376, 379.

ginning November 15, 1992, she took a medical leave of absence from work that would last until June 1993.[16]

While Carlson was on medical leave, Castillo continued to call her at home, write her letters, and at one point (apparently in April 1993) "showed up at her home, unannounced and uninvited, after Ms. Carlson had repeatedly refused his telephone calls."[17] As clarified by Carlson's counsel at the Pretrial Conference, this visit is the basis for Carlson's assault claim. Carlson's counsel also stated that Carlson voluntarily let Castillo into her house, and that he did not physically touch her.

On June 29, 1993, Carlson returned to work and made a complaint about Castillo to Molina, her supervisor.[18] Carlson states that Molina confided in Carlson that Castillo had acted the same way toward her, sending notes, letters, and flowers, and that Molina allegedly agreed to join Carlson in filing an internal complaint about Castillo.[19] Defendants claim that this complaint was the first lodged by Carlson.[20] Carlson conceded in her deposition that, at a series of meetings with supervisor Richard Bush in 1992 at which Castillo was discussed, she made no complaints about Castillo's behavior, and that she cannot recall making any complaint prior to June 1993.[21]

Soon after the June 29, 1993 complaint by Carlson, Sherry Anderson from RSOC's Human Resources interviewed Castillo.[22] On July 12, 1993, at Anderson's request, Carlson provided Anderson with a written statement of her complaints and copies of notes Castillo had written her.[23] RSOC investigated Carlson's complaint, and issued a written reprimand which stated that Castillo's behavior was disruptive and unprofessional and had violated several RSOC rules.[24] In addition, Anderson and Molina verbally reprimanded Castillo for disruptive and unprofessional behavior, and instructed him not to write or call Carlson regarding personal matters.[25]

Castillo states that after reprimand and counseling, he made an effort to be more cooperative, tried to abide by all of management's instructions, and did not initiate personal contact with Carlson.[26] On August 3, 1993, Carlson told Anderson that the harassment had ceased and that the situation was much improved.[27] Carlson stated in her de-

---

16. Plaintiff's RSOC/Castillo Response, at 4.

17. *Id.;* Carlson Affidavit, at 3.

18. Affidavit of Illiana Molina (Exhibit 1 of Rockwell Appendix) ("Molina Affidavit"), ¶ 11; Carlson Deposition, at 430.

19. Plaintiff's RSOC/Castillo Response, at 4; Carlson Affidavit, at 3. *See also* Deposition of Illiana Molina (Exhibit 8 to Plaintiff's RSOC/Castillo Response) ("Molina Deposition"), at 104–08 (Castillo sent red roses to Molina and once called her at home).

20. *See, e.g.,* Affidavit of Richard P. Bush, Supervisor in RSOC Space Flight Training Department (Exhibit 4 of Rockwell Appendix) ("Bush Affidavit"), ¶ 6 (prior to July 1993, Carlson had not advised Bush that she had any personal problem with Castillo; Bush had several meetings with Carlson in November 1992, at which Castillo's behavior with other personnel was specifically discussed and, when Bush asked Carlson directly whether there were any conflicts between Castillo and her that needed his attention, Carlson replied "no").

21. Carlson Deposition, at 213–17.

22. Castillo Motion, at 7, Affidavit of Sherry Anderson (Exhibit 2 of Rockwell Appendix) ("Anderson Affidavit"), ¶ 10; Molina Affidavit, ¶ 13.

23. RSOC Motion, at 10; Anderson Affidavit, ¶ 6 (and Exhibits B and C thereto).

24. Plaintiff's RSOC/Castillo Response, at 5; Internal Letter, dated July 20, 1993 (Exhibit B to Molina Affidavit).

25. Anderson Affidavit, ¶ 13. Defendants argue that Castillo was moody and difficult toward everyone, not just women. RSOC Motion, at 11; Anderson Affidavit, ¶ 9; Affidavit of Melissa Vaughan (Exhibit 3 of Rockwell Appendix) ("Vaughan Affidavit"), ¶ 8. Plaintiff disputes this, saying that no males received like treatment. Plaintiff's RSOC/Castillo Response, at 4–5; *see, e.g.,* Deposition of Tom Evans (Exhibit 7 to Plaintiff's RSOC/Castillo Response), at 19–30 (aware of women's complaints about Castillo, but not of similar complaints by men).

26. Affidavit of Jesse Castillo (Exhibit 5 of Rockwell Appendix) ("Castillo Affidavit"), ¶ 11.

27. Anderson Affidavit, ¶ 15; Internal Letter, dated August 20, 1993 (Exhibit H to Anderson Affidavit).

position that, for the most part, she and Castillo worked without incident between August 4, 1993 and October 18, 1993.[28]

However, Carlson now argues in response to the Summary Judgment Motion that, although Castillo refrained from harassing her in writing, he continued more "subversive" harassment.[29] Carlson alleges that, from the time of her initial complaint to Anderson in July 1993, she experienced retaliation from Castillo.[30] She claims that Castillo was hostile and abusive following her July 1993 complaint, refusing her technical support and information, turning abruptly and stomping away when they met in the hallway, entering her cubicle under the pretext of visiting her cubicle mate, and staring at her with a "ferocious" look so as to intimidate her.[31] She further states that he once told her that he would take the lead in a technical meeting so that she did not need to prepare, but then told her immediately before the meeting that she would have to lead it, thus causing her to appear unprepared and unprofessional.[32]

In October 1993, Castillo and Carlson had a personal conversation, alone in a room together for approximately one hour, about recent deaths in their families.[33] Carlson states that she "acquiesced" to Castillo's request "[b]ecause of her own personal experience in this area."[34] Castillo invited Carlson to lunch the next day and she refused.[35]

Carlson claims that the "process of Castillo's abusive behavior" then began again, and that she immediately complained to Molina.[36] These complaints were made in late October and early November, 1993. Molina states in her affidavit that she responded to these complaints by instructing Castillo not to engage in private conversations with Carlson or invite her to lunch, and by asking Carlson and Castillo to write down their tasks so as to establish clear lines of responsibility and minimize the contacts between them.[37] After having done so, Molina states that she met with the two of them to separate their tasks where possible.[38] Molina further states that, on November 4, 1993, Carlson demanded "total alienation" from Castillo, but stated that she understood that separation would take time, and Molina agreed to limit their contact as much as possible and to achieve full separation as soon as practical.[39]

28. Carlson Deposition, at 585.

29. Plaintiff's RSOC/Castillo Response, at 5. As support for this allegation, Carlson cites to her nine page affidavit, without page or paragraph reference. She also cites generally to "Exhibit 6" to her Response, which contains excerpts from her personal diary. This reference is incomprehensible. The diary excerpts are over 30 pages long. The absence of *page or date* identification makes this evidence or allegation vague and conclusory. The Court has no obligation to scour the record in search of evidence to support opposition to summary judgment. *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996). After the Pretrial Conference before this Court, Carlson has resubmitted much of her evidence with more specific references in the briefing. *See* Plaintiff's Supplemental Response to RSOC's Motion for Summary Judgment [Doc. # 82] ("Plaintiff's Supplemental Response") and Appendices [Doc. # 83, 84]. These supplemental materials will be referenced where appropriate.

30. Plaintiff's RSOC/Castillo Response, at 6; Carlson Affidavit, at 4. Carlson states that she insisted on anonymity in her complaints concerning Castillo because she was afraid of retaliation. *Id.* The statement that Carlson provided to Anderson on July 12, 1993, also states that she insisted on anonymity. *See* Exhibit 3 to Anderson Deposition. This request seems unrealistic. It is unclear how Defendant could possibly have meaningfully addressed the problem without all the people involved being aware of the specifics of the complaints.

31. Plaintiff's RSOC/Castillo Response, at 6; Carlson Affidavit, at 4.

32. *Id.* Plaintiff's Supplemental Response, at 5–6, provides specific citations to Carlson's Personal Diary as support for these allegations.

33. Castillo Motion, at 8; Carlson Deposition at 627–31.

34. Plaintiff's RSOC/Castillo Response, at 6; Carlson Affidavit, at 4–5.

35. Castillo Motion, at 8; Carlson Deposition at 632–33.

36. Carlson Affidavit, at 5.

37. Molina Affidavit, ¶ 16.

38. *Id.*

39. *Id.* ¶ 19. Molina states that Carlson did not follow her instructions to separate herself from Castillo and communicate only in writing, and that in the week following the meeting she ob-

Carlson does not deny that Molina took these steps. Rather, she merely adds her own impressions that when she lodged these complaints Molina "indicated that more people would have to come forward to substantiate Ms. Carlson's complaints" before "anything" could be done,[40] and that, in violation of company policy, Molina failed to inform the Human Resources Department about the continued harassment.[41] Carlson further states that Molina told her that she was not "going to serve [Carlson] on a silver platter," thereby sending the "clear message" that "the complaints of harassment and retaliation will not interrupt the work schedule of RSOC—[Carlson] should simply put up with it."[42]

On November 19, 1993, Carlson filed a second complaint regarding Castillo with Anderson.[43] On December 7, 1993, she filed a charge of discrimination with the EEOC.

Carlson alleges that, after she filed her EEOC complaint, RSOC's offer to separate Carlson and Castillo was withdrawn.[44] Carlson further claims that the evidence RSOC submitted to the EEOC excluded specific instances of retaliation about which Carlson had made complaints, and that RSOC attempted to interview her outside the presence of her attorney.[45] Carlson, without probative factual support, expresses her opinion that "because she had gone to ... the EEOC ... to formally complain about Mr. Castillo and his history of abuse and harassment of female co-workers, ... RSOC would no long-

er support [her] in her efforts to reduce the retaliation in the work place or alleviate the harassment."[46]

On January 19, 1994, Carlson wrote a memorandum to Dorothy Polk of Human Resources, stating that, although there had been an agreement to separate her from Castillo, she was scheduled to attend meetings with Castillo and her desk was still next to his. She stated that "[i]t is very difficult to work under these circumstances and I am concerned about my welfare, particularly, after hours."[47]

RSOC's Motion details other attempts it made in January 1994 and after to remedy the situation.[48] Molina asked for Carlson's suggestions and adopted them. Anderson interviewed Castillo's other co-workers. RSOC made offers to transfer Carlson to another department. Carlson does not dispute that Defendant took these specific actions.

Carlson's final complaint about Castillo was made on February 22, 1994.[49] She took her final medical leave of absence from RSOC beginning on March 25, 1994, and never returned to work.[50] This lawsuit was filed in May 1994.

By letter dated July 27, 1995, RSOC offered to transfer Carlson to a different training group at the newly created space station training division.[51] Under this offer, Carlson would have received identical or superior employment conditions, and would not have

---

served Carlson working and laughing with Castillo. *Id.*

**40.** It is unclear from Carlson's briefing and affidavit whether "anything" means anything at all, or rather anything more than the steps detailed in the Molina Affidavit.

**41.** Plaintiff's RSOC/Castillo Response, at 6–7 (citing Carlson's Personal Diary); Carlson Affidavit, at 4–5. *See supra* note 29 (regarding evidentiary problems with Carlson's Personal Diary).

**42.** Plaintiff's RSOC/Castillo Response, at 6–7; Carlson Affidavit, at 5.

**43.** Anderson Affidavit, ¶ 16.

**44.** Plaintiff's RSOC/Castillo Response, at 7 (citing Carlson's Personal Diary); Carlson Affidavit, at 5.

**45.** Plaintiff's RSOC/Castillo Response, at 8 (citing Carlson's Personal Diary); Carlson Affidavit, at 6.

**46.** *Id*

**47.** Memorandum to Polk dated January 19, 1994 (last page of Exhibit 6 to Plaintiff's RSOC/Castillo Response).

**48.** *See* RSOC Motion, at 19–25.

**49.** Castillo Motion, at 8; Carlson Deposition, at 990.

**50.** Molina Affidavit, ¶ 34.

**51.** Vaughan Affidavit, ¶ 10 and Exhibit C thereto.

been required to work with Castillo, Molina, or Bush.[52] However, Carlson resigned her employment with RSOC by letter dated July 31, 1995.[53]

## SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [54] The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion.[55] However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [56]

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial.[57] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[58] In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts.[59] Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[60]

## DISCUSSION

### I. Castillo's Motion for Summary Judgment

Plaintiff brings claims against Castillo for Title VII hostile environment, Title VII retaliation, intentional infliction of emotional distress, and assault.

■ **Title VII Liability as an Employer.**—Castillo's Motion argues that he is not individually liable under Title VII because he is not Carlson's employer, supervisor or manager, has never participated in her performance review sessions, has never completed her performance evaluations, has never had control of her work assignments, and had no authority to hire her, fire her, or give her raises, promotions, or demotions.[61] Plaintiff disputes Castillo's characterization of his status, arguing that he did have supervisory

**52.** *Id.*

**53.** *Id.* ¶ 11; Carlson's Resignation Letter (Exhibit D to Vaughan Affidavit).

**54.** Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990).

**55.** *Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)).

**56.** *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995).

**57.** *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

**58.** *Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075.

**59.** *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)).

**60.** *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

**61.** Castillo Motion, at 2–3.

capacity and completed performance appraisals of Carlson.[62]

■ Title VII does not impose liability upon individuals unless they meet the statutory definition of "employer." [63] While under certain circumstances an individual supervisor may be liable in his or her *official* capacity, "Title VII liability does not attach to individuals acting in their individual capacity." [64] Even assuming *arguendo* that Plaintiff were able to establish that Castillo was her supervisor, this would not be sufficient to impose liability upon Castillo, since Plaintiff has presented no evidence that he meets the statutory definition of "employer."

The Court holds that Castillo is not personally liable to Plaintiff under Title VII. Title VII is not intended to burden small entities such as individual employees with civil liability and costs associated with litigating discrimination claims.[65] Therefore, summary judgment is granted and Plaintiff's Title VII claims against Castillo are dismissed.[66]

■ *Intentional Infliction of Emotional Distress.*—In order to recover damages for intentional infliction of emotional distress, Plaintiff must prove the following:

(1) Defendant acted intentionally or recklessly;

(2) Defendant's conduct was extreme and outrageous;

(3) Defendant's actions caused Plaintiff emotional distress; and,

(4) the resulting emotional distress was severe.[67]

Liability for outrageous conduct "should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " [68]

■ Plaintiff argues that "Castillo's constant and repeated berating of Plaintiff, unreasonable demands, requests for a personal relationship, and retaliation for refusal of those advances meets [her] stringent burden" of establishing a claim of intentional

**62.** Plaintiff's RSOC/Castillo Response, at 3. RSOC states that because of his seniority, Castillo was the "Group Lead" in Carlson's area, and this title "simply identified him as a source of technical information, but which did not provide him any authority beyond that allowed to Carlson or any of her other co-workers." RSOC Motion, at 3; Molina Affidavit, ¶ 8. Castillo did recommend Carlson for certification. Castillo Motion, at 3; Molina Affidavit, ¶ 7.

**63.** *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir.1996) (ADEA claim); *Grant v. Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir.1994), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).

**64.** *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451 & n. 2 (5th Cir.1994).

**65.** *See Grant*, 21 F.3d at 652–53.

**66.** In the alternative, Castillo argues that Carlson cannot make out a *prima facie* case of hostile environment. The Court's ruling that Castillo is not subject to Title VII liability moots the issues on the merits of Plaintiff's Title VII claims, and

therefore the Court does not address those arguments.

**67.** *MacArthur v. University of Texas Health Center*, 45 F.3d 890, 898 (5th Cir.1995); *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 256 (5th Cir.1993); *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993).

**68.** *Twyman*, 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 (1965)); *accord*, *MacArthur*, 45 F.3d at 898. *See Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir.1995) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, rejecting Plaintiff's allegations that, despite his excellent job performance, he suffered humiliation and health problems when he was reclassified to an isolated position, he was given no input into critical management decisions, he was ostracized and given menial assignments, and his office and secretary were taken away); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31 (5th Cir.1992) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, despite allegations that Plaintiff was told that he did not "fit in" with the company, and that his supervisor was extremely hostile, constantly criticized him, threatened him with termination, reassigned his sales territory and removed a sale from his credits).

infliction of emotional distress under Fifth Circuit law.[69] Plaintiff further states that the "constant and consistent telephoning, letter writing and demands for a personal relationship" while Plaintiff was very ill was "tantamount to stalking, which activity is contrary to, and should not be tolerated in an otherwise civilized community."[70] She states that she was afraid for her life due to Castillo's previous hostility, stalking, abuse, and his history of drug and alcohol use.[71]

Taking all of Plaintiff's allegations as true, the Court holds that Castillo's conduct was offensive and highly inappropriate. Indeed, the conduct at times was understandably upsetting. However, Castillo's conduct cannot be classified as so extreme and outrageous as to go beyond "all possible bounds of decency" or "utterly intolerable in a civilized community."[72] Castillo's conduct must be considered in context. His attention-getting efforts were not all rejected by Plaintiff, on occasion she met with him or confided in him out of consideration for his or in connection with her own personal problems at the time. Also, Castillo's conduct outside of work apparently stopped at different times when Plaintiff made it clear (by telling him directly or through RSOC personnel) that the conduct truly was unwelcome. While Castillo's behavior towards Plaintiff was, at its worst, immature, insensitive to her wishes, and inappropriate, his unrequited overtures of friendship or affection simply do not meet the level of outrageousness or intolerability required to state a claim for intentional infliction of emotional distress as interpreted by controlling Fifth Circuit and Texas Supreme Court precedent.

■ As to Plaintiff's allegations of unfair or hostile conduct within the workplace, Plaintiff's complaints fall within the realm of conduct that the Fifth Circuit precedent classifies as an ordinary employment dispute, for which the claim of intentional infliction of emotional distress does not lie.[73]

Therefore, summary judgment is granted as to Plaintiff's claim against Castillo for intentional infliction of emotional distress.

■ *Assault.*—Texas law provides that a person commits assault when he or she:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.[74]

The definition of assault is the same whether it is the subject of a criminal prosecution or of a civil suit for damages.[75]

■ The headings in Plaintiff's RSOC/Castillo Response indicate that Carlson intends to respond to Defendants' summary judgment motion on the assault claim, but makes no argument separate from that noted in the intentional infliction of emotional distress section. Nor did Plaintiff have a meaningful response during the Court's questioning at the Pretrial Conference. Indeed, Plaintiff's counsel stated that the assault claim rests on the allegation that Castillo came to her house uninvited in April 1993. Carlson acknowledged that she let Castillo into her house voluntarily, and that Castillo did not physically touch her.

Plaintiff has not directed the Court to any summary judgment evidence supporting her assertion that Castillo intentionally, knowingly, or recklessly threatened Plaintiff with imminent bodily injury. Moreover, Plaintiff has not directed the Court to any evidence

---

69. Plaintiff's RSOC/Castillo Response, at 26. Plaintiff has provided no specific evidence, other than that already detailed, to support this statement.

70. *Id.* at 27.

71. *Id.*

72. *See Twyman,* 855 S.W.2d at 621.

73. *See Johnson,* 965 F.2d at 33–34.

74. Texas Penal Code § 22.01(a) (Vernon 1994).

75. *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan,* 518 F.Supp. 993, 1013 (S.D.Tex. 1981).

that Castillo either caused Carlson bodily injury or had offensive or provocative physical contact with her.[76] Summary judgment on Plaintiff's assault claim therefore is granted in favor of Defendant Castillo.

*Conclusion.*—For the foregoing reasons, Castillo's Motion for Summary Judgment is granted in its entirety. All claims against Castillo are dismissed with prejudice.

## II. *Rockwell International's Motion for Summary Judgment*

Plaintiff's claims against Rockwell International are Title VII hostile environment, Title VII retaliation, intentional infliction of emotional distress, assault, and negligent hiring, training and supervision.[77]

■ *Title VII Claims.*[78]—Title VII liability attaches only to a plaintiff's "employer." [79] Rockwell International argues that it is not liable under any of the asserted claims because it is not, and has never been, Carlson's employer. Instead, Defendants claim that RSOC is Carlson's employer.[80]

While RSOC is a wholly owned subsidiary of Rockwell International, RSOC and Rockwell International are separate entities with separate Boards of Directors and Human Resources Departments.[81] Rockwell International states that RSOC sets its own employee policies, hires its own employees, makes its own determinations with respect to its employees, and offers different benefits than Rockwell International.[82] As for Carlson, she dealt solely with RSOC's Human Resources Department when making complaints about the conduct at issue in this action.[83]

Carlson argues that Rockwell International is her employer, based on the following factors:

- RSOC's employee handbook demonstrates that RSOC follows policies as set by Rockwell International;[84]

- Carlson signed agreements with Rockwell International regarding terms and conditions of her employment as it related to company use of her vehicle;[85]

76. *See Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996) (Rule 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition"); *Little,* 37 F.3d at 1075 (non-movant's summary judgment burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence).

77. Plaintiff has requested that this Court suspend its ruling on Rockwell International's Motion until further discovery can be completed. *See* Doc. #72. This request is based on an alleged *Houston Chronicle* article stating that Rockwell International has contracted with Lockheed Martin to form a joint venture, and that Rockwell International has directed RSOC employees to commerce working under the joint venture. No copy of this article has been supplied to the Court. Nevertheless, the argument appears meritless on its face, since there is no showing of the relevance of this discovery.

78. Defendant states that it is possible that Carlson is also asserting claims under the Texas Commission on Human Rights Act. However, as Defendant correctly points out, claims under the state statute are subject to the same legal analysis as Title VII claims. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991).

79. 42 U.S.C.A. § 2000e–2(a)(1); 42 U.S.C.A. § 2000e–3(a). As stated previously, Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b).

80. Rockwell International Motion, at 3. Furthermore, Rockwell International states that it has never employed Castillo, Bush, nor Vaughan and that, at all times material to this matter, it did not employ Anderson or Molina. Rockwell International Motion, at 3; Castillo Affidavit, ¶ 3; Bush Affidavit, ¶ 2; Vaughan Affidavit, ¶ 2; Anderson Affidavit, ¶ 3; Molina Affidavit, ¶ 3.

81. Vaughan Affidavit, ¶ 4; Affidavit of William Hartman (Exhibit 6 of Rockwell Appendix), ¶ 6–8.

82. Vaughan Affidavit, ¶ 5; Hartman Affidavit, ¶ 9.

83. Carlson Deposition, at 177.

84. *See* Exhibit 1 to Plaintiff's Rockwell International Response.

85. *See* Exhibit 6 to Plaintiff's Rockwell International Response.

- Carlson's paychecks were written on Rockwell International checks; [86]
- Carlson directly paid Rockwell International for benefits related to her employment; [87]
- Castillo signed proprietary agreements with Rockwell International during the course of this litigation; [88]
- Changes in work status as to Carlson and Castillo are recorded on Rockwell International documents; [89] and,
- Internal Letters relevant to this suit are on Rockwell International letterhead.[90]

Basically, this evidence shows that RSOC uses at its option Rockwell International forms, letterhead, paychecks, and other documents for most administrative personnel matters. It does not demonstrate that Rockwell International had any actual control over the hiring, firing, and other employment decisions regarding RSOC employees.[91] Indeed, Plaintiff has cited the Court to no such evidence.

The Court holds that Rockwell International was not Carlson's employer for purposes of Title VII. Plaintiff has failed to raise a genuine question of material fact on this issue, and summary judgment is therefore granted as to her Title VII claims against Rockwell International.

**■** *Common Law Claims.* Plaintiff asserts the claims of intentional infliction of emotional distress, assault, and negligent hiring, training and supervision. Plaintiff does not allege that any Rockwell International

employee acted so as to cause her harm or damage. Indeed, when asked in her deposition, Carlson could name no specific Rockwell International employee who had retaliated against her or inflicted emotional distress.[92] Instead, the persons about whom Carlson complains are all employees of RSOC. Therefore, the Court holds that Rockwell International is not directly liable for Plaintiff's common law claims.

**■** Carlson argues that any liability on the part of RSOC can be imputed to Rockwell International under the "integrated enterprise" test.[93] Under the "integrated enterprise" test, a parent company may be liable for the actions of its subsidiary based upon four factors:

(1) interrelation of operations;

(2) centralized control of labor relations;

(3) common management; and

(4) common ownership or financial control.[94]

As noted above, RSOC and Rockwell International are separate entities with separate boards of directors and human resources departments.[95] In addition, Rockwell International has presented evidence that RSOC sets its own employee policies, hires its own employees, makes its own determinations with respect to its employees, and offers different benefits than Rockwell International.[96] In *MCI Telecommunications*, the Court held as follows:

The testimony at trial demonstrates that Cox was employed by MCIT [MCI Tele-

---

**86.** *See* Exhibit 3 to Plaintiff's Rockwell International Response.

**87.** *See* Exhibits 1, 2, and 5 to Plaintiff's Rockwell International Response.

**88.** *See* Exhibit 14 to Plaintiff's Rockwell International Response.

**89.** *See* Exhibits 2, 9, 10, 16, and 19 to Plaintiff's Rockwell International Response.

**90.** *See* Exhibit 17 to Plaintiff's Rockwell International Response.

**91.** *See Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir.1986) (most important inquiry in determining *de facto* employer of a plaintiff is which entity made the final

decisions regarding employment matters related to plaintiff).

**92.** Carlson Deposition, at 1022–28, 1065–68.

**93.** Plaintiff's Rockwell International Response, at 5.

**94.** *EEOC v. MCI Telecommunications Corp.,* 820 F.Supp. 300, 307 (S.D.Tex.1993) (citing *Chaiffetz,* 798 F.2d at 735; *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983)).

**95.** Vaughan Affidavit, ¶ 4; Hartman Affidavit, ¶¶ 6–8.

**96.** Vaughan Affidavit, ¶ 5; Hartman Affidavit, ¶ 9.

communications Corporation], not MCIC [MCI Communications Corporation]. While MCIC is the parent company of MCIT, they have different boards of directors and separate human resource functions; there is no centralized control of labor relations. Therefore, in this case, MCIC is not an appropriate defendant; only MCIT is a proper defendant.[97]

The same analysis applies here.

The Court holds that there is no genuine issue of material fact under the integrated enterprise test, and that RSOC's liability, if any, may not be imputed to Rockwell International.

*Conclusion.*—For the foregoing reasons, Rockwell International's Motion for Summary Judgment is granted. All claims against Rockwell International are dismissed with prejudice.

### III. *RSOC's Motion*

*Title VII Limitations Period.*—A plaintiff must have filed an EEOC charge within 300 days after the allegedly discriminatory incident in order to recover damages flowing from that incident.[98] However, while they may not be a basis for recovery, incidents which occurred outside of the limitations period may be properly considered as evidence relevant to the incident within the limitations period. For example, alleged demotions or transfers that occurred outside of the 300 days could be considered as evidentiary support for a discharge that occurred within the 300 days, even though only the discharge is a basis for recovery.[99]

In this case, Plaintiff's EEOC charge was filed December 7, 1993. Therefore, alleged discriminatory events in or after February 1993 may be a basis for recovery.[100]

■ *Hostile Work Environment.*—At the Pretrial Conference, the Court asked the parties to brief the issue of whether Carlson's work environment supports a claim for hostile work environment under Title VII. Each side has since submitted supplemental briefing.

Plaintiff's Supplemental Response presents the following as evidence of hostile work environment in July 1993 or after:

- On several occasions, Castillo refused to provide Carlson with information related to their shared projects.[101]
- Castillo informed Carlson that he would take the lead in presenting information at a scheduled meeting on November 4 but, at the last minute, refused to do so, therefore requiring Carlson to lead a meeting for which she was not prepared.[102]
- Castillo continued to act abruptly, rudely, and angrily toward Carlson.[103]
- Despite Carlson's repeated request that she and Castillo have only a work relationship, Castillo continued to try to expand their relationship by, for example, requesting that Carlson discuss with him the recent death of his stepfather.

97. *MCI Telecommunications*, 820 F.Supp. at 307.

98. *See* 42 U.S.C. § 2000e–5(e)(1).

99. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n. 12 (5th Cir.1995); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199–200 (5th Cir. 1992); *Humphreys v. Medical Towers, Ltd.*, 893 F.Supp. 672, 683 (S.D.Tex.1995).

100. Plaintiff does not contend that a continuing violation exists.

101. As support for this allegation, Carlson cites to her personal diary entries for July 13 (Carlson asked Castillo when he would be able to meet regarding a specific project, but Castillo "snapped … that he could not talk to [her] about setting up a [meeting] because he did not feel well and walked out of the cubicle"), July 21

(Carlson approached Castillo regarding a typographical error in a script he had printed; Castillo seemed very angry, was "short" with her and would not answer her), and August 3 (Carlson offered Castillo the use of her pen and to work a different shift, but she was ignored). Carlson's Personal Diary (Exhibits 6A and 6B to Plaintiff's Supplemental Response).

102. Carlson's Personal Diary (Exhibit 6C to Plaintiff's Supplemental Response).

103. As support for this allegation, Carlson cites the Court to entries in her personal diary dated July 21, August 3, October 21, and October 22. Carlson's Personal Diary (Exhibits 6A, 6B and 6C to Plaintiff's Supplemental Response). Several entries from November refer to similar conduct, although Carlson's brief does not cite to them.

When Carlson agreed to the discussion, Castillo again began to ask her out socially.[104]

Carlson further states that she repeatedly complained to Molina, but was told that "more people have to come forward" before Molina would act, that her complaints were not promptly reported to Human Resources, and that management attempted to dissuade her from further reporting.[105]

■■■ To state a claim for relief under a theory of hostile work environment claim, Carlson must show:

(1) that she belongs to a protected class,

(2) that she was subject to unwelcome harassment,

(3) that the harassment was based on sex,

(4) that the harassment affected a term, condition or privilege of employment, and

(5) that the employer knew or should have known about the harassment and failed to take prompt remedial action.[106]

Conduct must be "severe or pervasive" to create a hostile working environment, sufficient to create an environment that a reasonable person would find hostile or abusive.[107] In making such a determination, the courts look to factors such as the frequency of the conduct, its severity, the degree to which it is physically threatening or humiliating, and

the degree to which it unreasonably interferes with an employee's work performance. Title VII "was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace," and therefore conduct that only "sporadically wounds or offends but does not hinder a female employee's performance" is not actionable.[108]

Even if all of Plaintiff's evidence is assumed to be true, and even if the Court accepts conduct before October 1993 as actionable, the conduct of which Plaintiff complains is insufficient as a matter of law to establish a hostile work environment under Title VII. The evidence identified by Plaintiff, when asked to marshal all of her evidence supporting her claim of a hostile work environment, does not establish conduct of sufficient frequency or severity, much less conduct that was physically threatening.[109]

■■■ Plaintiff's claim also must fail because RSOC responded to her complaints with adequate prompt remedial action. An employer is liable for sexual harassment only if it knew or should have known of the harassment and failed to take prompt remedial action.[110] An employer takes prompt remedial action if it " 'took the allegation seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based

**104.** Plaintiff's Supplemental Response, at 4–5. Carlson's Affidavit also alleges that, after she filed her EEOC charge in December, 1993, RSOC's earlier offer to separate Carlson and Castillo was "no longer available," and that RSOC no longer supported her in her efforts to alleviate the harassment. Carlson Affidavit, at 5–6.

**105.** Plaintiff's Supplemental Response, at 5. Carlson cites, as support, Exhibit 12 of Volume II of the Appendix in Support of Plaintiff's Supplemental Response, an exhibit that her Table of Contents identifies as "Notes of meeting with Michelle Carlson re: continued problems with Jesse Castillo." The notes are both handwritten and typed, all pertaining to November 1993. The author of the notes is not identified, and is not identifiable since Carlson, Castillo, Molina, Anderson, Vaughan, Polk, and Bush all are referenced in the third person.

**106.** *Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir.1996); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *petition for cert. filed*, 65 U.S.L.W. 3205 (U.S. Sept. 3, 1996) (No. 96428); *DeAngelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

**107.** *Weller*, 84 F.3d at 194.

**108.** *Id.*

**109.** *Cf. Weller*, 84 F.3d at 195 (reversing jury verdict awarding damages under hostile work environment theory); *DeAngelis*, 51 F.3d at 597 (same).

**110.** *Waymire*, 86 F.3d at 428; *Nash v. Electrospace System, Inc.*, 9 F.3d 401 (5th Cir.1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 720 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)).

on the results of such investigations.' "[111] RSOC's discipline of Castillo in July 1993 was adequate under this standard.[112]

Carlson, however, alleges that Molina stated that she could not do "anything"[113] unless more people came forward with complaints against Castillo, and that RSOC management attempted to dissuade Carlson from further reporting Castillo's harassment.[114] As support, Carlson cites only to the notes submitted as Exhibit 12, which are insufficiently identified,[115] and to her personal diary. The referenced pages of her diary are relevant to this argument in that they state:

- Carlson called Molina on November 4 and requested "complete alienation" from Castillo; Molina was "very understanding" and had a meeting with Carlson on November 5; on November 8, 10 and 12, Carlson inquired but Molina told her she had been busy and had not yet spoken to Castillo about the new arrangement.

- On November 18, Carlson was told to confront more people and ask them to come forward; Molina said she had to look out for the best interests of the group, asked Carlson if she was up to additional responsibility, said "these things take time" and told Carlson she needed documentation; Carlson asked if Human Resources should be informed and Molina said Human Resources could not do anything that had not been done already.

- On November 18, Molina called an impromptu meeting without Castillo to discuss "difficult people," asked people to write down traits of such people and then to write down the name of a difficult person.

- On November 19, Carlson was informed by the scheduler that she was to have a four hour meeting with Castillo; Molina was on vacation and had not informed the scheduler or her temporary replacement that Castillo and Carlson were not to have meetings together. After Carlson alerted the scheduler to the situation, she was no longer required to attend the meeting with Castillo.

- On November 19, Carlson phoned Anderson in Human Resources and complained; Anderson stated that she had not heard from Molina and assumed all was well; Anderson said more people did *not* have to come forward and that the impromptu meeting held by Molina was "strange;" Anderson told Carlson to contact her in the event of even a minor problem with Castillo.[116]

Even if no evidentiary problems were plaguing these excerpts, they still would be insufficient to raise a fact question as to RSOC's failure to take prompt remedial action. Molina and Anderson both responded to Carlson's complaints—within one day, by Carlson's own account. While there may be room to criticize some of Molina's decisions or actions, this Court may not substitute its judgment for that of the employer.[117] The Court holds that RSOC took prompt remedial action as a matter of law.[118] Therefore, summary judgment in favor of RSOC is granted as to Carlson's hostile work environment claim.

---

**111.** *Waymire,* 86 F.3d at 428 (citing *Carmon v. Lubrizol Corp.,* 17 F.3d 791, 795 (5th Cir.1994)).

**112.** Molina explained in detail the measures she took in response to Carlson's complaints. Molina Affidavit, ¶¶ 16, 19. As Molina states, RSOC's attempts to respond to Carlson's requests for separation from Castillo were hindered by Carlson's extended medical absences and her lack of NASA-mandated certifications that would have allowed her to work independently. *Id.* at ¶ 19.

**113.** *See supra* note 41.

**114.** Plaintiff's Supplemental Response, at 5; Carlson Affidavit, at 4–5.

**115.** *See supra* note 105.

**116.** Carlson's Personal Diary (Exhibit 6C to Plaintiff's Supplemental Response).

**117.** *E.E.O.C. v. Louisiana Office of Community Servs.,* 47 F.3d 1438, 1445–46 (5th Cir.1995); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988); *Deaver v. Texas Commerce Bank N.A.,* 886 F.Supp. 578, 585 (E.D.Tex.1995), *aff'd,* 79 F.3d 1143 (5th Cir. 1996).

**118.** *Cf. Waymire,* 86 F.3d 424.

■ *Quid Pro Quo Harassment.*—In order to show that she was the subject of *quid pro quo* sexual harassment, Carlson must demonstrate the following:

(1) that she is a member of a protected group;

(2) that she was subject to unwelcome sexual harassment;

(3) that the complained-of harassment was based upon sex;

(4) that her reaction to the harassment affected tangible aspects of the terms and conditions of her employment, with her acceptance or rejection of the harassment being either an express or implied condition to receipt of a benefit to or the cause of a tangible adverse effect on the terms or conditions of her employment; and, finally,

(5) respondeat superior.[119]

At the Pretrial Conference, the Court instructed Plaintiff to supply the Court with summary judgment evidence of a tangible adverse effect on the terms or conditions of her employment in the relevant period, so as to satisfy the fourth prong of the above test. Plaintiff's Supplemental Response cites the Court to the following evidence:

● Carlson was subjected to additional stress because RSOC continued to require her to work with Castillo, so that it became impossible for her to cope with her medical condition and she "was left no alternative" but to take a leave of absence and ultimately to resign.

● Because of her repeated complaints about Castillo's harassment and RSOC's failure to address the problem, Carlson was threatened with negative performance evaluations by Molina and Bush.

● Carlson was informed that Castillo would not be moved, and that, if she wanted to

be separated from him, she would be required to move her desk to an isolated area "which in essence would require Ms. Carlson to ostracize herself from the entire department." [120]

Defendant has presented evidence, which Plaintiff does not contest, that RSOC never decreased her pay, demoted her, nor gave her a formal negative employment evaluation.[121]

■ Plaintiff's evidence, even if assumed to be true, is insufficient as a matter of law to establish a tangible adverse effect on the terms and conditions of Plaintiff's employment. Carlson's first complaint might be read to make a claim of constructive discharge. However, in order to establish constructive discharge, Carlson must demonstrate "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." [122] Since this Court has held that Carlson's allegations are insufficient as a matter of law to establish a hostile working environment, her claim of constructive discharge also fails. Furthermore, since it is undisputed that RSOC had investigated and responded to many of Carlson's complaints, often adopting her suggestions directly, Carlson's working conditions were not so difficult or unpleasant that a reasonable person in Carlson's shoes would have felt *compelled* to resign, as is required for a claim of constructive discharge.[123] Therefore, the Court holds that Carlson has not raised a genuine issue of material fact as to a claim of constructive discharge and that such claim cannot serve as a "tangible adverse effect" supporting her *quid pro quo* claim.

■ Carlson's remaining complaints as to her *quid pro quo* claim, *i.e.*, that she was forced to take medical leave, that she was *threatened* with negative performance re-

---

**119.** *Ellert v. University of Texas at Dallas*, 52 F.3d 543, 545 (5th Cir.1995); *see also Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 196 (5th Cir.1991), *cert. denied*, 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992).

**120.** Plaintiff's Supplemental Response, at 3–4.

**121.** Molina Affidavit, ¶ 35; Carlson Deposition, at 1060–61.

**122.** *Weller*, 84 F.3d at 195 n. 7 (5th Cir.1996); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429 (5th Cir.1992), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

**123.** *See Landgraf*, 968 F.2d at 429–31.

views, and that she would be ostracized if she changed work areas, are likewise insufficient to establish a tangible adverse effect on the terms and conditions of her employment. The Fifth Circuit has recently held that Title VII was designed to address "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating, but that it is not designed to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." [124] Carlson's potential or threatened lowered performance reviews, her voluntary separation from others in the department, and aggravation of unrelated medical conditions so as to require a leave of absence, even if established by the evidence, do not suffice as ultimate employment decisions under Title VII.

**Retaliation.**—In order to make out a prima facie case of retaliation, Carlson must demonstrate (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment action. [125]

As discussed above, Carlson has not presented sufficient evidence that she was subject to an adverse employment action. Therefore, her claim of retaliation must fail as a matter of law, and summary judgment is granted in favor of RSOC.

***Intentional Infliction of Emotional Distress.***—Plaintiff's intentional infliction claim relies entirely on alleged conduct by Castillo. The Court has previously held, on Castillo's motion for summary judgment, that these allegations are insufficient as a matter of law. Therefore, summary judgment is granted.

***Assault.***—As with intentional infliction, Plaintiff's assault claim relies entirely on alleged conduct by Castillo. Since the Court has granted summary judgment in favor of Castillo on this claim, summary judgment in favor of RSOC is also granted.

***Negligent Hiring, Supervision, and Retention.***—Plaintiff has made a claim of negligent hiring, supervision, and retention of Castillo. The Court holds that this claim must fail as well. [126]

Defendants argue that Carlson must establish that the employee committed an independent actionable tort against her in order to state a claim for negligent hiring, supervision, or retention. [127] Plaintiff does not contest this argument directly, but rather has argued that her claims of assault and intentional infliction of emotional distress are sufficient to support her cause of action. [128]

Since summary judgment has been granted as to all of Plaintiff's claims of assault and intentional infliction of emotional distress, Plaintiff's argument is no longer dispositive. Furthermore, even if Plaintiff did have remaining viable Title VII claims, other district courts have held that sexual harassment *per se*, when not supported by a claim of tortious conduct, is insufficient to state a claim for negligent hiring or supervision. In a well-reasoned opinion discussing Tennessee common law, a Tennessee district court held:

A claim that an employer negligently supervised an employee who has sexually harassed a co-employee does not transmute sexual harassment into a common law tort. Sexual harassment has never been a common law tort; as a cause of action, it is a statutory creation.... A negligent supervision claim cannot be

124. *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995).

125. *Id; DeAngelis,* 51 F.3d at 597.

126. As for the merits of a claim of negligent hiring, in order for an employer to be found liable " 'there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant and be, in some manner, job-related. Stated another way, the negligence in hiring the employee must be the proximate cause of the injures to the

plaintiff.' " *Peek v. Equipment Servs., Inc.,* 906 S.W.2d 529, 534 (Tex.App.—San Antonio 1995) (quoting *Dieter v. Baker Service Tools,* 776 S.W.2d 781 (Tex.App.—Corpus Christi 1989, writ denied)); *see also Polly v. Houston Lighting & Power Co.,* 803 F.Supp. 1, 8 (S.D.Tex.1992), *adopted in relevant part,* 825 F.Supp. 135 (S.D.Tex.1993).

127. RSOC's Motion, at 30.

128. *See* Plaintiff's RSOC/Castillo Response, at 23–24.

692

based solely upon an underlying claim of sexual harassment *per se,* because the effect would be to impose liability on employers for failing to prevent a harm that is not cognizable injury under the common law. Sexual harassment, however, may include conduct that is independently actionable under the common law, such as battery or intentional infliction of emotional distress. Thus, this Court finds that a negligent supervision claim will lie in a sexual harassment case if supported by a viable claim of tortious conduct by the offending co-employee.[129]

Since Carlson no longer has claims pending of either tortious conduct or Title VII violations against any Defendant, summary judgment is granted as to Carlson's claim for negligent hiring, supervision, and retention.

### CONCLUSION

The Court finds this case to be a particularly difficult one. Plaintiff Carlson clearly has suffered from the combination of her physical health problems and the aggravation of a co-worker's repeated but awkward efforts to befriend her. The Court concludes, however, that under these circumstances the law does not impose on the employer legal liability for monetary damages, nor does it impose liability allowing the Court to impose equitable relief that would amount to detailed management of the employer's business. A federal court is not to second guess employment and personnel decisions when a person such as Castillo, who apparently has a difficult personality, is required to work with a person of heightened sensibilities, such as Carlson. The employer and its supervisory personnel must have discretion to deal with these difficulties, so as to resolve them day by day in the workplace. For the foregoing reasons, it is hereby

**ORDERED** that Rockwell Space Operations Company's Motion for Summary Judg-

ment [Doc. # 35] is **GRANTED**. It is further

**ORDERED** that Rockwell International Corporation's Motion for Summary Judgment [Doc. # 38] is **GRANTED**. It is further

**ORDERED** that Jesse Castillo's Motion for Summary Judgment [Doc. # 39] is **GRANTED**. It is further

**ORDERED** that Rockwell Defendants' **Motion to Strike Carlson's Summary Judgment Evidence and Brief in Support** [Doc. # 52] is **GRANTED IN PART**. It is further

**ORDERED** that RSOC's **Motion to Show Cause** [Doc. # 86] is **DENIED**.

denied a motion to dismiss a negligent supervision claim, holding that, since Plaintiffs had alleged intentional infliction of emotional distress, the negligent supervision claim was recognized under Tennessee law. *Hays,* 844 F.Supp. at 1223–24.

129. *Hays v. Patton–Tully Transp. Co.,* 844 F.Supp. 1221, 1223 (W.D.Tenn.1993) (citations omitted); *see also Campbell v. Jackson Business Forms Co.,* 841 F.Supp. 772, 775 (S.D.Miss.1994) (because negligent supervision claim is duplicative of plaintiff's Title VII claim, which is time barred, it must be dismissed). The *Hays* Court